# FIRST NATIONAL BANK OF GUTHRIE CENTER *v.* ANDERSON, COUNTY AUDITOR, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 26.   Argued January 27, 1925.—Decided January 4, 1926.

1. In a case from a state court the question whether the federal right was sufficiently alleged in the pleading must be determined by this Court for itself.   P. 346.
2. When a state court has treated a case as cognizable in equity, this Court can not decline to review the federal questions involved upon the ground that it was not so.   *Id.*
3. Decree *held* reviewable by writ of error, and certiorari denied.   *Id.*
4. The restriction imposed by Rev. Stats. § 5219, upon state taxation of national bank shares, viz., that the taxation "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State," was violated where the national and state bank stock within a county, not exceeding $316,852, was taxed at the rate of 143.5 mills per dollar, while

$5,000,000 of other moneyed capital in the hands of individuals, consisting of notes, mortgages and other evidences of indebtedness, such as normally enter into the business of banking, and which was used in competition with the complaining national bank, was taxed in the county at only 5 mills on the dollar. P. 347.

5. The Act of March 4, 1923, in reënacting the above provision of Rev. Stats. § 5219 with additions, did no more than put into express words that which, according to repeated decisions of this Court, was implied in the original section. P. 349.

6. The investment of individual capital in farm mortgages is not inconsistent with its being used in competition with national banks, since the prohibition against loans on real estate by national banks was partly withdrawn by the Acts of Dec. 22, 1913, and Sept. 7, 1916. P. 352.

7. Where a bill by a national bank to restrain a state tax on its shares alleged facts showing a discrimination, violative of Rev. Stats. § 5219, in taxing other capital consisting of notes, mortgages, etc., at a lower rate, it was error to assume, on demurrer, as a matter of judicial notice, that such capital was, in practice, loaned by the plaintiff and other banks, acting as agents for their customers, and was therefore non-competing. P. 354.

196 Iowa 587, reversed.

ERROR to a judgment of the Supreme Court of Iowa, affirming a judgment dismissing the bill, on demurrer, in a suit brought by a national bank on behalf of its shareholders, to restrain collection of a discriminating tax on their shares.

*Mr. J. G. Gamble,* with whom *Messrs. John P. Foster* and *Ralph L. Read* were on the briefs, for plaintiff in error.

*Messrs. Ben J. Gibson,* Attorney General of Iowa, and *Earl W. Vincent,* with whom *Mr. Maxwell A. O'Brien,* Assistant Attorney General of Iowa, was on the briefs, for defendants in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This is a suit by a national bank on behalf of its shareholders to restrain the collection of a tax levied against

the latter on their shares.  The bank is located at Guthrie
Center in Guthrie County, Iowa.  The defendants, who
are county officers charged with the duty of collecting
taxes, interposed a general demurrer to the petition.  The
demurrer was sustained, judgment against the plaintiff
was entered, and the judgment was affirmed by the Su-
preme Court of the State, 196 Iowa 587.

The petition assails the tax on several distinct grounds,
only one of which is relied on here.  The allegations dis-
playing this ground are:

" The said tax as entered upon the tax list by the
County Auditor is void because it is a discrimination be-
tween bank stock and moneyed capital invested in com-
petition therewith, and in violation of Sec. 5219, Revised
Statutes of the United States.  Plaintiff avers that in the
town of Guthrie Center, Iowa, the total levy for local,
county and state tax purposes was one hundred forty-
three and five-tenths mills on the dollar for the year 1920,
and said tax on plaintiff and its shareholders was es-
timated and charged at said rate. . . .  That under
the laws of Iowa a levy of only five mills on the dollar is
imposed upon notes, mortgages and other evidences of
debt, and investments of individuals in securities, which
represent money at interest, and other evidence of in-
debtedness such as normally enter into the business of
banking, and the tax for the year 1920 upon moneyed
capital of individual citizens of Guthrie County, Iowa,
and of the Town of Guthrie Center, engaged in compe-
tition with plaintiff, was so levied and computed.  That
the amount of notes, mortgages and other evidences of
money loaned and put out at interest by individual citi-
zens in the county of Guthrie, Iowa, was a very large
sum, which amount plaintiff is unable to state; but upon
information and belief plaintiff charges said amount to be
more than five millions of dollars, which were included
in the 1920 assessment, and upon which the tax levy was

but five mills on the dollar; while the total of all bank
stock, including state and national in Guthrie County,
Iowa, does not exceed the sum of $316,852.00. That ap-
proximately five millions of dollars of moneyed capital
in the hands of individual citizens consisting chiefly of
notes, mortgages and money loaned at interest was taxed
for the year 1920 in Guthrie County, Iowa, under the
laws of Iowa, at five mills on the dollar."

"That said assessment is erroneous in that it is con-
trary to the provisions of Section 5219 of the Revised
Statutes of the United States; because by said assess-
ment the shares of stock of the plaintiff are subjected to
a greater assessment and tax than is imposed upon money
capital in the hands of individual citizens in said State
used and utilized in the same business."

The Supreme Court of the State, in the fore part of
its opinion, summarizes the several grounds on which the
bank urged it to hold the tax invalid. The ground relied
on here, as there summarized, is " that the [state] statute
providing for a tax of five mills on the dollar of moneyed
capital loaned and invested in competition with national
banks discriminates against the same and is void under
Section 5219 of the Revised Statutes of the United
States." The record also shows that in that court the
defendants recognized that the bank was contending " its
shares of stock are taxed at a greater rate under the Iowa
law than is moneyed capital " contrary to the restrictions
of the federal statute, and that they made the counter
contention that " the law under which it is sought to hold
appellant bank liable for the 1920 taxes does not vio-
late Sec. 5219 of the U. S. Revised Statutes." True, the
Supreme Court in the latter part of its opinion says, " It
is not claimed that section 1310 of the statute [the state
law] is invalid, or that ample provision is not made
thereby for the assessment of other moneyed capital in
the hands of individuals or other owners at the same rate

as national and state banks are taxed, when invested in competition therewith." At first this seems a contradiction of the court's earlier statement. But these statements are explained and the seeming conflict dispelled by what otherwise appears in the record, which is, that the bank was making the alternative contentions that the state law, if construed and applied according to its words, does not permit any discrimination against national bank shares and is in accord with the federal statute, but, if construed and applied as sustaining what is alleged in the petition, it permits the discrimination which the federal statute forbids and is in that respect invalid.

The case is here on writ of error, the substance of the assignment of errors being that the Supreme Court of the State, although holding that the state law permits the discrimination against national bank shares alleged in the petition, denied the bank's contention that, when so construed and applied, that law is in conflict with the federal statute.

A petition for review on writ of certiorari also was presented and its consideration was postponed to the hearing on the writ of error.

By a motion to dismiss, the jurisdiction of this Court on the writ or error is challenged on the grounds, first, that the state court rested its judgment on the construction and sufficiency of the allegations of the petition and its decision of that question is conclusive here; and, secondly, that the judgment is right independently of any ruling on the asserted federal question, in that the suit is not one in which relief may be had in equity, because (a) an adequate remedy at law may be had under the local law by paying the tax and suing to recover the money, (b) the bank has not exercised the local statutory right of appealing from the action of the county officers in imposing the tax, and, (c) there has been no payment or tender of so much of the tax as would be due if the five-mills levy were applied to the shares.

Plainly, the first ground cannot be maintained. Whether a pleading sets up a sufficient right of action or defense, grounded on the Constitution or a law of the United States, is necessarily a question of federal law; and where a case coming from a state court presents that question, this Court must determine for itself the sufficiency of the allegations displaying the right or defense, and is not concluded by the view taken of them by the state court. *Mitchell* v. *Clark,* 110 U. S. 633, 645; *Boyd* v. *Thayer,* 143 U. S. 135, 180; *Covington and Lexington Turnpike Co.* v. *Sandford,* 164 U. S. 578, 595; *Carter* v. *Texas,* 177 U. S. 442, 447. The principle is general, and is a necessary element of this Court's power to review judgments of state courts in cases involving the application and enforcement of federal laws. *Davis* v. *Wechsler,* 263 U. S. 22, 24.

The second ground is not better. The Supreme Court of the State treated the case as cognizable in equity and perceived no obstacle to a consideration of the merits as displayed in the petition. In this that court was proceeding within limits where the state laws and practice were controlling, and its action is not open to revision here. In cases coming from state courts this Court's power and concern are specially directed to rulings made or refused on federal questions. *Murdock* v. *Memphis,* 20 Wall. 590, 638; *Bi-Metallic Investment Co.* y. *State Board of Equalization,* 239 U. S. 441, 444.

With the objections just considered out of the way, it suffices to say this Court's jurisdiction on the writ of error has full support in *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S. 282. The motion to dismiss is accordingly overruled, and the petition for certiorari is denied.

The state court holds that the state law authorizes the taxation shown in the petition; and, as this ruling on a purely state question must be accepted here, we turn to

the question, chiefly pressed on our attention, whether the state law, so construed and applied, conflicts with the federal statute. In approaching its solution there is need for having in mind the occasion for the federal statute and the purpose and words of the restriction therein which is said to have been violated here.

National banks are not merely private moneyed institutions but agencies of the United States created under its laws to promote its fiscal policies; and hence the banks, their property and their shares cannot be taxed under state authority except as Congress consents and then only in conformity with the restrictions attached to its consent. *Des Moines National Bank* v. *Fairweather*, 263 U. S. 103, 106, and cases cited. The early legislation respecting these banks contained a restricted consent, which afterwards became § 5219 of the Revised Statutes. By it Congress assented to the taxation of the shares to their owners under the laws of the State where the bank was located, subject to the restriction that " the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State," and further assented to the taxation of the real property of the bank for state, county, and municipal purposes " to the same extent, according to its value, as other real property is taxed." This consent thus restricted was in force when the tax here assailed was levied.

The restriction on the taxation of the shares often has been considered by this Court. The earlier decisions have been reviewed from time to time in later cases, and all, taken collectively, may be summarized as showing, so far as is material here

1. The purpose of the restriction is to render it impossible for any State, in taxing the shares, to create and foster an unequal and unfriendly competition with national banks, by favoring shareholders in state banks or individuals interested in private banking or engaged in opera-

tions and investments normally common to the business of banking. *Mercantile National Bank* v. *New York,* 121 U. S. 138, 155; *Des Moines National Bank* v. *Fairweather, supra,* 116.

2. The term "other moneyed capital" in the restriction is not intended to include all moneyed capital not invested in national bank shares, but only that which is employed in such way as to bring it into substantial competition with the business of national banks. *Mercantile National Bank* v. *New York, supra,* 157; *Aberdeen Bank* v. *Chehalis County,* 166 U. S. 440, 461.

3. Moneyed capital is brought into such competition where it is invested in shares of state banks or in private banking; and also where it is employed, substantially as in the loan and investment features of banking, in making investments, by way of loan, discount or otherwise, in notes, bonds or other securities with a view to sale or repayment and reinvestment. *Mercantile National Bank* v. *New York, supra,* 155–157; *Palmer* v. *McMahon,* 133 U. S. 660, 667–668; *Talbot* v. *Silver Bow County,* 139 U. S. 438, 447.

4. The restriction is not intended to exact mathematical equality in the taxing of national bank shares and such other moneyed capital, nor to do more than require such practical equality as is reasonably attainable in view of the differing situations of such properties. But every clear discrimination against national bank shares and in favor of a relatively material part of other moneyed capital employed in substantial competition with national banks is a violation of both the letter and spirit of the restriction. *People* v. *Weaver,* 100 U. S. 539; *Boyer* v. *Boyer,* 113 U. S. 689, 701; *National Bank of Wellington* v. *Chapman,* 173 U. S. 205, 216.

In the briefs there is some discussion as to whether our decision in *Merchants' National Bank* v. *Richmond,* 256 U. S. 635, attributed to the term "other moneyed

capital" a wider meaning than was recognized before. But nothing was said in the opinion indicating that an enlargement was intended. On the contrary, it distinctly accepted the meaning adopted in prior decisions. The case was unusual in one respect. The defendants took the position that the congressional restriction was directed only against discrimination in favor of state banking associations, and they persisted in it to the extent of making no effort at the trial to controvert the evidence produced by the plaintiff to show that a relatively large amount of moneyed capital, taxed at a lower rate than the bank's shares, was employed in substantial competition with the business of the bank. When that position proved untenable by reason of settled rulings to the contrary, the case was left where the outcome turned on the evidence of competition produced by the plaintiff. That evidence was somewhat meager, but in the absence of any counter evidence was held sufficient, and the tax was accordingly pronounced invalid. If the outcome was open to criticism, it was not because any enlarged meaning was attributed to the term " other moneyed capital," but because the facts bearing on the question of competition were not sufficiently brought out at the trial and shown in the record.

By the Act of March 4, 1923, c. 267, 42 Stat. 1499, passed after the levy of the tax in question, § 5219 of the Revised Statutes was amended by extending the consent of Congress to any one of three forms of taxation. That of taxing the shares to their owners was retained as one of the three, and the prior restriction was reënacted with added words here shown in italics, making it read as follows:

" In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State *coming into competition with the business of*

*national banks: Provided, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section."*

The defendants say that this reënactment was intended as a legislative interpretation of the prior restriction, and that the proceedings resulting in its adoption so show. But, assuming that this is true, the situation is not changed; for the reënactment did no more than to put into express words that which, according to repeated decisions of this Court, was implied before. In *Mercantile National Bank* v. *New York, supra,* where the terms and purpose of the restriction were much considered, it was distinctly held that the words " other moneyed capital " must be taken as impliedly limited to capital employed in substantial competition with the business of national banks. In later cases that definition was accepted and given effect as if written into the restriction. It, of course, would exclude bonds, notes or other evidences of indebtedness when held merely as personal investments by individual citizens not engaged in the banking or investment business, for capital represented by this class of investments is not employed in substantial competition with the business of national banks. Thus in legal contemplation and practical effect the restriction was the same before the reënactment as after. What bearing a different legislative interpretation might have on a tax already levied, as here, need not be considered.

With this understanding of the congressional restriction, we come to consider whether the allegations of fact in the petition, admitted by the demurrer, show that the tax on the bank's shares, which the state court regards as authorized by the state law, was imposed con-

trary to that restriction. The allegations before quoted are all that are material. They declare at the outset and again later on that the shares were subjected to a greater rate of taxation than was imposed on other moneyed capital in the hands of individuals used and utilized in competition with the bank. This declaration is so connected with the intervening allegations that it both colors and explains them. Some of these are directly to the effect that the tax on the shares was computed at the rate of one hundred and forty-three and five-tenths mills on the dollar, while that on notes, mortgages and other evidences of indebtedness, "such as normally enter into the business of banking" and representing moneyed capital of individual citizens "engaged in competition" with the bank, was computed at five mills on the dollar. Then follows an allegation that the amount of notes, mortgages and other evidences of indebtedness representing moneyed capital of individual citizens of the county, and taxed at five mills on the dollar, was approximately $5,000,000, while the total bank stock, state and national, in the county was not more than $316,852.

The defendants point out that the allegation last mentioned does not in itself say that the $5,000,000 of other moneyed capital, or any substantial portion of it, was employed in competition with the bank; and from this they argue that the petition falls short of showing a discrimination in favor of a relatively substantial amount of moneyed capital so employed. But that allegation is so related to the others that, to be rightly understood, it must be read with them. We think such a reading shows that it is intended to refer to the notes, mortgages and other evidences of indebtedness which the others describe as representing moneyed capital of individual citizens engaged in competition with the bank, and that it means that this competing capital, on which the five-mills tax

was imposed, approximated $5,000,000, while the bank stock, which was subjected to the tax of one hundred and forty-three and five-tenths mills, did not exceed $316,852. Thus understood, the allegation is in accord with the theory on which the others obviously proceed, and serves, with them, to show a serious discrimination against the bank's shares and in favor of a relatively substantial amount of competing moneyed capital.

It may be that some of the allegations were in such general terms as to be subject to a motion for a more specific statement, but such a motion was not made, and the objection appears not to have been open on the general demurrer. *Lamb* v. *McCormick*, 116 Iowa 169, 174–175; *B., C. R. & M. R. Co.* v. *Stewart*, 39 Iowa 267, 272; *Noyes* v. *Mason City*, 53 Iowa 418, 419.

The Supreme Court of the State regarded the petition as alleging " simply that notes and other evidences of money loaned, payment of which is secured by mortgages upon farm lands," were taxed at a lower rate than the bank shares; and in that view of the allegations the court observed that the tax on the shares was not imposed contrary to the congressional restriction, unless moneyed capital loaned on farm mortgages was to be regarded as loaned or invested in competition with national banks. On this question the court said:

" Although it does not appear upon the face of the petition, it is a matter of common knowledge that banks, national as well as state, particularly in the rural communities of Iowa, are the instrumentalities through which much the larger portion of farm loans is made; that many banks, as such, or through others with which they are interested, act as agents of insurance companies and other financial institutions having large sums of money to loan upon farm security; and that the money of individuals is either loaned directly by the bank for the accommodation of the owner, who is its customer, or

loans are made in advance by the bank, and later transferred to such other customers as have money to loan. The money of individuals loaned in the community thereby becomes a source of profit to the bank. It is also well known that money borrowed upon farm security finds its way at once, or ultimately, into the local banks, and is drawn out in the regular course of the borrower's business.

" The Supreme Court of the United States, so far as we are advised, has never had occasion to pass upon the question whether money · thus loaned may be said to be invested or loaned in competition with national banks. Upon this question, the decision of the Supreme Court, when announced, will be final; but, until that time arrives, we must adopt and follow our own interpretation of its prior decisions and of the laws of Congress. Surely, moneyed capital loaned and invested by banks, as the agents of their customers, cannot be said to be loaned in competition therewith. Competition means rivalry, and the loaning of money by national and other banks for individuals at a profit, or for the convenience of such owners, is lacking in all the essentials of competition."

The allegations of the petition already have been quoted at length. They say, " notes, mortgages, and other evidences of money loaned at interest," and they describe these securities as " such as normally enter into the business of banking " and as representing .moneyed capital of individuals "engaged in competition with the plaintiff." We find in them no specific mention of farm mortgages, nor anything indicating that they refer only to such mortgages. No doubt they are broad enough to include farm mortgages; but. this does not weaken the allegation of competition, for while national banks were formerly prohibited from making loans on real estate, Rev. Stats., §§ 5136, 5137; *Union National Bank* v. *Matthews,* 98 U. S. 621, 625; *National Bank of Genessee* v.

80048°—26——23

*Whitney,* 103 U. S. 99, the prohibition was partly withdrawn and much of that field was opened to such banks by the Acts of December 22, 1913, c. 6, § 24, 38 Stat. 273, and September 7, 1916, c. 461, 39 Stat. 754.

As the case now stands, we think no effect can be given to what the state court assumes is the practice of banks in rural portions of Iowa in making farm loans as agents for their customers or others. If there be such a practice, it is not a matter which may be noticed and given effect without pleading or proof. If followed by some banks, it may not be followed by others. The state court does not speak of it as universal, but only as followed by "many banks." Certainly the record gives no ground for holding that the plaintiff follows it. In this situation the allegation of competition stands unaffected by the assumed practice.

We conclude that the state law, when construed and applied as authorizing the discrimination against the bank's shares which is charged in the petition, is in that regard in conflict with the restriction in the federal statute.

*Judgment reversed.*