COMMERCIAL NATIONAL BANK OF MILES CITY et al.,
Appellants, v. CUSTER COUNTY et al., Respondents.

(No. 5,861.)

(Submitted March 2, 1926. Decided March 23, 1926.)

[245 Pac. 259.]

*Taxation—Shares of Stock in National Banks—Discrimination in Favor of "Moneyed Capital" of Individuals—What Does not Constitute.*

Taxation—National Banks.
  1. National banks, being instrumentalities of the government, may be taxed only as authorized by Congress.
Same—Shares of Stock in National Banks—Rate of Assessment.
  2. Under section 5219, United States Revised Statutes, shares of stock in a national bank cannot be assessed at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state coming into competition with the business of national banks.
Same—"Moneyed Capital"—Shares of Stock in National Bank—What Does not Constitute Discrimination Against.
  3. Where money invested by individual citizens in bonds, notes or other evidences of indebtedness is not employed in competition with the business conducted by national banking corporations, it does not constitute "moneyed capital" within the meaning of section 5219, *supra*, and the state properly could, as it did by section 1999, Revised Codes of 1921, tax shares of stock in a national bank at a higher rate (but on the same basis on which shares in state banking corporations are assessed) than moneys loaned by individuals upon promissory notes secured by mortgages, or loans made by a building and loan association or by a real estate and investment business, and its action in that regard is not open to the charge that it thereby unlawfully discriminated against national banks as such in contravention of the provisions of section 5219.

[1, 2] Taxation, 37 Cyc., p. 830, n. 60, 61; p. 831, n. 67, 68; p. 832, n. 69, 74; p. 833, n. 75.
[3] Taxation, 37 Cyc., p. 835, n. 89; p. 836, n. 99, 2, 3.

*Appeal from District Court, Custer County; Stanley E. Felt, Judge.*

1. Taxation of national banks, see notes in 96 Am. Dec. 290; 69 Am. St. Rep. 40. See, also, 26 R. C. L. 110.
2. See 26 R. C. L. 115.
3. See 26 R. C. L. 113.

ACTION by the Commercial National Bank of Miles City and another against Custer County and others. Judgment for defendants and plaintiffs appeal. Affirmed.

*Messrs. Loud & Leavitt,* for Appellants, submitted a brief; *Mr. Charles H. Loud* argued the cause orally.

National banks, being instrumentalities of the government, cannot be taxed except in so far as is authorized by Congress, and section 5219 of the United States Revised Statutes, is the measure of the power of the states to tax national banks, their property or their franchises, that power being confined to a taxation of the shares of stock in the names of the shareholders and to an assessment of the real property owned and held by the bank. The taxes cannot be against the bank but must be against the individual shareholders upon an assessment against them according to the value of the shares. (*New York* v. *Weaver,* 100 U. S. 539, 25 L. Ed. 705 [see, also, Rose's U. S. Notes] ; *Mercantile National Bank* v. *New York,* 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826; *Talbott* v. *Silver Bow County,* 139 U. S. 438, 35 L. Ed. 210, 11 Sup. Ct. Rep. 594; *Owensboro Nat. Bank* v. *Owensboro,* 173 U. S. 664, 43 L. Ed. 850, 19 Sup. Ct. Rep. 537; *First Nat. Bank* v. *Adams,* 258 U. S. 362, 66 L. Ed. 661, 42 Sup. Ct. Rep. 323 [see, also, Rose's U. S. Notes Supp.] ; *Merchants' Nat. Bank* v. *City of Richmond,* 256 U. S. 635, 65 L. Ed. 1135, 41 Sup. Ct. Rep. 619; *Des Moines Nat. Bank* v. *Fairweather,* 263 U. S. 103, 62 L. Ed. 191, 44 Sup. Ct. Rep. 23; *Chase Nat. Bank* v. *Spokane County,* 125 Wash. 1, 215 Pac. 374; *National Rockland Bank of Boston* v. *City of Boston,* 296 Fed. 743.)

By an examination of section 5219 above it becomes apparent that the meaning and intent of the lawmakers was that the rate of the taxation of the shares should be the same, or not greater, than upon the moneyed capital of the individual citizens which is subject or liable to taxation; that is, no greater portion or percentage of tax in the valuation of the shares

should be levied than upon other moneyed taxable capital in the hands of the citizens; any system or method of taxation which by exemption of property, by difference in valuation, or by different percentages, in effect, causes the shares of stock of national banks to be taxed at a greater rate than that which is imposed upon other moneyed capital in the hands of individuals violates the letter and spirit of this statute and renders any tax levied in conformity therewith null and void. (*New York* v. *Weaver, supra; Evansville Nat. Bank* v. *Britton,* 105 U. S. 322, 26 L. Ed. 1053, 1054 [see, also, Rose's U. S. Notes] ; *Merchants' Nat. Bank* v. *City of Richmond, supra;* · *Des Moines Nat. Bank* v. *Fairweather,* 263 U. S. 102, 119, 62 L. Ed. 191, 200, 44 Sup. Ct. Rep. 23; *Boyer* v. *Boyer,* 113 U. S. 689, 703, 28 L. Ed. 1089, 1903, 5 Sup. Ct. Rep. 706.)

The phrase "other moneyed capital" has been repeatedly before the court for definition and construction because it is the most important phrase contained in the section, and upon its proper definition the entire question of discrimination depends.  This phrase was carefully considered and its meaning construed in the case of *Mercantile National Bank* v. *New York, supra,* which has become the leading case, and the rule of construction there laid down has been since consistently adhered to by the supreme court of the United States.

We submit that the rule there announced is the only rule which can be stated which will serve to put the assessment and taxation of the shares of the national banks on an equality with that of other moneyed capital in the hands of individual citizens.  (See, also, *Palmer* v. *McMahon,* 133 U. S. 660, 667, 33 L. Ed. 772, 10 Sup. Ct. Rep. 324; *Aberdeen Bank* v. *Chehalis County,* 166 U. S. 440, 454, 41 L. Ed. 1069, 1075, 17 Sup. Ct. Rep. 629; *First Nat. Bank* v. *Chapman,* 173 U. S. 205, 214, 43 L. Ed. 699, 19 Sup. Ct. Rep. 407; *Jenkins* v. *Neff,* 186 U. S. 230, 46 L. Ed. 1140, 22 Sup. Ct. Rep. 905; *National Bank of Baltimore* v. *Mayor,* 100 Fed. 24, 40 C. C. A. 254.)

We assert that wherever it can be shown that a very large and substantial proportion of the wealth of the county is ex-

empt from taxation by virtue of the laws of a state, or where it appears that a very considerable amount of the moneyed capital, owned and held by individuals or corporations other than national banks, is assessed and taxed at a much less rate than is imposed upon the shares of national banks, and that such property is moneyed capital which is in competition with the moneyed capital of national banks, then any system of taxation which will permit such discrimination to be made is absolutely and directly in conflict with the letter and the spirit of section 5219 of the Revised Statutes of the United States before as well as after amendment. (*People* v. *Goldfogle,* 234 N. Y. 345, 137 N. E. 611; *Merchants' Nat. Bank* v. *City of Richmond, supra; Eddy* v. *First Nat. Bank,* 275 Fed. 550; *People ex rel. Bridgeport Sav. Bank* v. *Feitner,* 191 N. Y. 88, 83 N. E. 592.)

*Mr. L. A. Foot,* Attorney General, *Mr. A. H. Angstman,* Assistant Attorney General, and *Mr. Rudolph Nelstead,* County Attorney of Custer County, for Respondents, submitted a brief; *Mr. Angstman* argued the cause orally.

May the state tax moneyed capital of individuals on the basis of seven per cent without any deductions or offsets, and exact a tax from the shareholders of national banks based upon forty per cent of their value after deducting outstanding indebtedness? This principle of law was involved in the case of *People ex rel. Bridgeport Savings Bank* v. *Feitner,* 105 N. Y. Supp. 993. In that case it appeared that under the laws of the state of New York individual citizens had the right to deduct their debts from property subject to taxation, whereas national bank shares were taxable upon their value without any right to deduction for debts. It appeared, however, that the national bank shares were taxed at the rate of one per cent upon their value, whereas the property of individuals was taxed at the rate of 2.31 per cent. The supreme court of New York, after reviewing numerous decisions of the supreme court of the United States relating to the taxation of national banks, held

that in the absence of any showing on the part of the owner of national bank shares that there was unfriendly discrimination against national bank shares the tax would be upheld. (*Bressler* v. *Wayne County*, 32 Neb. 834, 13 L. R. A. 614, 49 N. W. 787; *Aberdeen* v. *Chehalis County*, 166 U. S. 440, 41 L. Ed. 1069, 17 Sup. Ct. Rep. 629 [see, also, Rose's U. S. Notes].)

The provision of the federal statute that shares of stock in national banks should not be assessed ''at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state'' was intended merely to prevent unfriendly discrimination against investments in national banks in favor of other investments of a competitive character. (*Talbott* v. *Silver Bow Co.*, 139 U. S. 438, 35 L. Ed. 210, 11 Sup. Ct. Rep. 594 [see, also, Rose's U. S. Notes].)

The purpose of Congress in fixing limits to state taxation on shares of national banks was to render it impossible for a state, in levying such a tax, to create and foster an unequal and unfriendly competition by favoring institutions or individuals carrying on a similar business and operations of a like character. (*Mercantile Nat. Bank* v. *New York*, 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826.)

The term ''moneyed capital'' is used in a restricted sense in the federal law, and what constitutes moneyed capital within the meaning of this section is to be determined by the nature of the business in which it is employed, the purpose of the statute being to prevent discrimination against national banks as such. Where capital is not so employed as to come into competition with the business of national banks, although in a general sense it is moneyed capital, it is within the discretion of the state to tax it at a different rate from banking capital. (*National Bank of Baltimore* v. *Mayor*, 100 Fed. 24, 40 C. C. A. 254.) National banks are not protected against discriminatory taxation in favor of other ''moneyed capital'' unless such capital is employed in a business competitive with that of such bank. (*First Nat. Bank of Raton* v. *McBride*, 20 N. M. 381,

149 Pac. 353; *Mercantile Nat. Bank* v. *New York,* 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826.)

Neither is there any unfriendly discrimination against national banks unless the "moneyed capital" left unassessed or assessed at a less rate than shares of stock in national banks is as to any material portion thereof moneyed capital coming into competition with that of national banks. (*Adams* v. *Nashville,* 95 U. S. 19, 24 L. Ed. 369; *National Newark Banking Co.* v. *Newark,* 121 U. S. 163, 30 L. Ed. 904, 7 Sup. Ct. Rep. 839; *Aberdeen Bank* v. *Chehalis County,* 166 U. S. 400, 41 L. Ed. 1069, 17 Sup. Ct. Rep. 629; *National Bank of Commerce* v. *Seattle,* 166 U. S. 463, 41 L. Ed. 1079, 17 Sup. Ct. Rep. 996; *McMahon* v. *Palmer,* 102 N. Y. 176, 55 Am. Rep. 796, 6 N. E. 400.)

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiff to recover the sum of $10,065.92, taxes paid to Custer county for the year 1922 under protest, which taxes were levied upon the shares of the capital stock held by individual owners of the plaintiff bank. After issue was joined by answer of the defendants filed to the complaint, the cause was submitted for decision upon an agreed statement of facts. The court found in favor of the defendants and ordered the action dismissed at plaintiff's costs. Judgment was entered accordingly, and the appeal is from the judgment.

But a single question is presented for determination, namely: Do our taxation statutes, sections 1999 and 2000, Revised Codes of 1921, discriminate against the shares of the capital stock of national banks in the imposition of taxes thereon?

It appears that the plaintiff is a banking corporation organized and existing under the National Bank Act, with its principal place of business at Miles City, where it conducted a general banking business, and engaged in making loans of its moneyed capital upon both real and personal property within Custer county, in the purchase of bonds, warrants, credits and

other securities and evidences of indebtedness, and generally the utilization of its capital as authorized by the national banking laws; that in the year 1922 there was listed and assessed against it a tax on real property of the assessed value of $13,236, and as against it and its stockholders an assessment was made on the shares of its capital stock to the amount of $358,324. On the first Monday in March, 1922, it had on deposit the sum of $1,627,185.46, which sum, together with its capital, surplus, undivided profits, and borrowed money, constituted working capital with which it carried on its banking business. For the year 1922, its paid-in capital, together with its surplus and undivided profits, aggregated $371,560, which, after deducting the value of its real estate, left as the full and true value of the shares of its capital stock the sum of $358,324, upon which amount such stock was taxed. For the year 1922, the shares of stock in national banking corporations, including those of the plaintiff bank, were, by the county assessor, placed in Class 6 under the Classification Act (Rev. Codes 1921, secs. 1999, 2000), and thereby the tax therein was computed and assessed on the basis of forty per cent of its true and full value. For the same year there was listed and entered upon the books of the defendant county assessments levied against money and credits, secured and unsecured, including all state, county, school district and other municipal bonds, warrants, securities and other evidence of indebtedness, to the aggregate amount of $467,995, which property was under the Act listed in Class 5 for taxing purposes, and thereby the tax thereon was computed on the basis of seven per cent of its true and full value. Of this latter amount, the sum of $130,821 represented the capital stock of building and loan associations operating in the country. The assessment involved is the same as that applied to state banks. Evidences of debts secured by mortgages of record on real or personal property were not assessed for purposes of taxation, in accordance with the exemption thereof provided by statute. (Sec. 1998, Rev. Codes 1921.)

During the year 1922, G. M. Miles, Amy McGregor, now Amy Hutchinson, Fred Savage, James Fitzpatrick, W. G. Paine and Preston Wilson, as individuals, loaned large sums of money upon promissory notes, with one or more indorsers, or upon promissory notes, the payment of which was secured by pledges of personal property or by real estate or chattel mortgages in the county of Custer, all of which were, by the defendant county, placed in Class 5 and assessed upon the basis of seven per cent of their full and true value, with the exception of those loans secured by mortgages which were entirely exempt from taxation.

On the first Monday of March, 1922, there were on record in Custer county unsatisfied personal property mortgages securing the payment of indebtedness due to individuals amounting to a sum in excess of the loans of plaintiff's bank, the payment of which was secured by chattel mortgages, and there were on record in Custer county real property mortgages securing the payment of indebtedness due to individuals amounting to a sum in excess of the loans of plaintiff bank, the payment of which was secured by real property mortgages.

The Custer County Building & Loan Association is a building and loan incorporation organized under the laws of Montana, with its principal place of business in Custer county. During the year 1922 it had its capital invested in mortgage loans to its members for building and other purposes, and in loans to its members secured by pledges of their stock in the association. During the taxable year of 1922, W. B. Clarke, S. Fred Gale, and the Calvin Investment Company, were each and all nonborrowing stockholders of the Custer County Building & Loan Association, owning and holding in the aggregate $11,040 of the stock of that corporation, and yet all of the stock of such association was assessed under Class 5.

The Miles Trust & Realty Company is a Montana corporation, authorized to conduct a real estate and investment business, and during the year 1922 it devoted and used a considerable portion of its capital in making loans to individuals and cor-

porations upon unsecured promissory notes, or notes with the indorsement of one or more persons, or promissory notes, the payment of which was secured by pledges of personal property, aggregating $15,183, all of which was taxed under classification 5. Of the amount so assessed against that company, approximately seventy per cent consisted of loans of money made to individuals on unsecured promissory notes ranging from $80 to $1,300, and payable from ninety days to one year from the date of their execution. The remaining portion of such sum, or thirty per cent thereof, represented cash or money belonging to it available for use, a portion of which was actually used after the first Monday in March, 1922, in making loans upon unsecured promissory notes, either with or without one or more indorsers, for like periods of time. On the first Monday in March, 1922, it held and owned promissory notes representing loans previously made, aggregating $75,000, the payment of which was secured by mortgages upon real and personal property or contracts of sale of real property.

There is no contention that the county officers did not follow the Classification Law of Montana in making the assessment of, and in imposing the taxes on, the shares of the capital stock of the plaintiff bank. However, it is urged by the plaintiff that the system of taxation provided by our statute imposes a greater burden upon the shares of capital stock of a national bank than that borne by other moneyed capital in the possession of others coming into competition with the business of a national bank; it being plaintiff's contention that such discrimination renders the tax illegal to the extent of the difference. Under protest the plaintiff paid the tax, amounting to the sum of $12,444.39, which is $10,085.92 in excess of that which it would have been required to pay had its shares of stock been placed in Class 5, and the tax computed upon a basis of seven per cent. Are its shares of stock taxed at a greater rate under our statute than is moneyed capital, contrary to the restrictions of the federal law?

Under the Classification Act, so far as applicable here, it is provided: "For the purpose of taxation the taxable prop-

erty in this state shall be classified as follows: " * * *
Class Five. All moneys and credits, secured or unsecured, including all state, county, school district and other municipal bonds, warrants and securities without any deduction or offset: Provided, however, that the terms, moneys and credits as herein used shall not embrace the moneyed capital employed in the banking business by any banking corporation or individual in 'this state.

"Class Six. The shares of stock of national banking associations and the moneyed capital employed in conducting a banking business by any other banking corporation, association or individual in this state. Such money[ed] capital to be ascertained by deducting from the moneys and credits of such banking corporation, association, or individual, the amount of the deposits and any indebtedness representing money borrowed for use in said business, and the value of the shares of any national banking association, to be ascertained by deducting the value of all real estate of such association." (Sec. 1999, Rev. Codes 1921.)

And, by the provisions of the following section of the statute, the basis for the ·imposition of taxes upon the classes of property specified in the preceding section is established at a percentage of the "true and full value" of the property as so classified. Class 5 is fixed at seven per cent and Class 6 at forty per cent. (*Id.* 2000.)

However, national banks, being instrumentalities of the gov-
[1, 2]   ernment may be taxed only in so far as authorized by Congress. The statutes of the United States have restricted the power of the states to the· taxation of the shares of stock in the names of shareholders, and to an assessment of the real property owned and held by the bank. The taxes cannot be against the bank, but must be against the individual shareholders upon an assessment against them according to the value of the shares, without discrimination in favor of other property in like situation. (*New York* v. *Weaver,* 100 U. S. 539, 25 L. Ed. 705 [see, also, Rose's U. S. Notes]; *Mercantile Nat.*

*Bank* v. *New York,* 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct.
Rep. 826; *Talbott* v. *Silver Bow County,* 139 U. S. 438, 35
L. Ed. 210, 11 Sup. Ct. Rep. 594; *Aberdeen Bank* v. *Chehalis
County,* 166 U. S. 440, 41 L. Ed. 1069, 17 Sup. Ct. Rep. 629;
*Owensboro Nat. Bank* v. *Owensboro,* 173 U. S. 664, 43 L. Ed.
850, 19 Sup. Ct. Rep. 537; *Amoskeag* v. *Purdy,* 231 U. S. 373,
58 L. Ed. 274, 34 Sup. Ct. Rep. 114; *First Nat. Bank* v. *Adams,*
258 U. S. 362, 66 L. Ed. 661, 42 Sup. Ct. Rep. 323 [see, also,
Rose's U. S. Notes Supp.]; *Merchants' Nat. Bank of Richmond*
v. *City of Richmond,* 256 U. S. 635, 65 L. Ed. 1135, 41 Sup.
Ct. Rep. 619; *Des Moines Nat. Bank* v. *Fairweather,* 263 U. S.
103, 62 L. Ed. 191, 44 Sup. Ct. Rep. 23; *First Nat. Bank of
Guthrie Center* v. *Anderson,* 269 U. S. 341, 70 L. Ed. 171, 46
Sup. Ct. Rep. 135; *National Bank* v. *Mayor of Baltimore,* 100
Fed. 24, 40 C. C. A. 254; *National Rockland Bank of Boston*
v. *City of Boston* (D. C.), 296 Fed. 743; *Chase Nat. Bank* v.
*Spokane County,* 125 Wash. 1, 215 Pac. 374.)

Section 5219 of the Revised Statutes of the United States,
prior to the amendment of 1923, reads as follows: ''Nothing
herein shall prevent all the shares in any association from being
included in the valuation of the personal property of the owner
or holder of such shares, in assessing taxes imposed by authority
of the state within which the association is located; but the
Legislature of each state may determine and direct the manner
and place of taking all the shares of national banking associa-
tions located within the state, subject only to the two restric-
tions, that the taxation shall not be at a greater rate than is
assessed upon other moneyed capital in the hands of individual
citizens of such state, and that the shares of any national bank-
ing association owned by nonresidents of any state shall be
taxed in the city or town where the bank is located, and not
elsewhere. Nothing herein shall be construed to exempt the
real property of associations from either state, county, or
municipal taxes, to the same extent, according to its value, as
other real property is taxed.''

Subsequent to the tax levy made for the year 1922, this statute was amended by the Act of March 4, 1923 (42 Stats. at Large, 1499. [U. S. Comp. Stats. Supp. 1925, sec. 9784]), extending the consent of Congress given the state respecting the taxation of shares of stock of national banks by the state. So far as it is applicable here, the provisions of the amendment read as follows: ''(b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks: Provided, that bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section.''

The amendment to the section constituted a legislative interpretation of the restrictions of the statute, but accomplished ''no more than to put into express words that which, according to repeated decisions'' of the supreme court of the United States, was implied before. (*First Nat. Bank of Guthrie Center* v. *Anderson supra.*)

Plaintiff's learned counsel contend that the decision of this court in the case of *First Nat. Bank of Glendive* v. *Dawson County,* 66 Mont. 321, 213 Pac. 1097, must be distinguished from the present case, as there is no similarity of facts. It is urged that the record in this case supplies the facts found wanting in the *Dawson County Case;* that in that case the facts upon which the alleged discrimination was made do not appear, whereas in the case now before us the agreed statement provides the necessary showing.

The federal statute is directed to the law-making bodies of the several states, and by it they are expressly authorized to direct the manner and place of taxing all shares of national banking associations located within a state, provided only: That they (1) shall not be taxed at a greater rate than is

assessed upon other moneyed capital in the hands of individual citizens of the state and (2) that the shares of stock of a national bank owned by nonresidents shall be taxed where the bank is located. And, when such shares of stock are so made taxable, the rate must not be greater than "is assessed *upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks.*"

Investments by individual citizens in bonds, notes, or other **[3]** evidences of indebtedness not *"engaged in the banking or investment business* and representing merely personal investments,*"* are not to be treated or considered as the character of moneyed capital coming within the inhibition of the federal statute. The term "moneyed capital" is used in a restricted sense in the federal law, and what constitutes moneyed capital within the meaning of this section is to be determined by the nature of the business in which it is employed; the purpose of the statute being to prevent discrimination against national banks as such. Where money is not so employed as to come into competition with the business of national banks, although in a general sense it is "moneyed capital," it is within the province of the state to tax it at a different rate from banking capital.

"The state is not obliged to apply the same system to the taxation of national banks that it uses in the taxation of other property, provided no injustice, inequality, or unfriendly discrimination is inflicted upon them." (*First Nat. Bank* v. *Dawson County,* 66 Mont. 321, 213 Pac. 1097; *People ex rel. Bridgeport Savings Bank* v. *Feitner,* 191 N. Y. 88, 83 N. E. 592; *Amoskeag Savings Bank* v. *Purdy, supra.*)

The purpose of Congress in thus restricting state taxation of the shares of stock in national banking corporations was to render it impossible to create and foster discrimination in favor of state institutions or individuals engaged in the conduct of a like business, or a use and investment of money properly to be considered as coming in competition with the business

of national banks. (*Mercantile Nat. Bank* v. *New York; National Bank* v. *Mayor of Baltimore; Amoskeag Savings Bank* v. *Purdy; Des Moines Nat. Bank* v. *Fairweather; First Nat. Bank of Guthrie Center* v. *Anderson,* cited above.)

''The policy and purpose of Congress was to protect the instrumentalities created by it from unfair competition, by requiring that all persons engaged in like business should pay upon the capital so employed a like and equal rate of taxation. *The true test is the nature of the business in which the person is engaged;* and, that cannot be determined by the character of the investment. 'Moneyed capital' does not mean all capital, the value of which is measured in terms of money. It has been held that stocks and bonds of insurance, wharf, gas, and other miscellaneous corporations might be entirely exempted from taxation, although such companies may be engaged in business for the pecuniary profit of their shareholders, and employ moneyed capital in their operations, because, from the nature of their business, they are not competitors with the national banks. So, too, municipal bonds may be exempted altogether from taxation, because they are not within the reason of the rule established by Congress for the taxation of national bank shares, and the tax on personal property generally is not the measure of the tax on shares of national banks. The exemption from taxation of savings banks has been sustained, although it seems clear that deposits are moneyed capital, because it has been held that their business does not come into competition with national banks, and because it is the obvious interest and policy of the states to promote their growth.'' (*National Bank* v. *Mayor of Baltimore, supra*). So, also, as respects building and loan associations. (*First Nat. Bank of Glendive* v. *Dawson County, supra.*)

In the case of *Mercantile Bank* v. *New York, supra,* the supreme court, in interpreting the federal statute, through Mr. Justice Matthews, said: ''That 'moneyed capital in the hands of individual citizens,' does not necessarily embrace shares of stock held by them in all corporations whose

capital is employed, according to their respective corporate powers and privileges, in business carried on for the pecuniary profit of shareholders, although shares in *some* corporations, according to the nature of their business, may be such moneyed capital.   *   *   *   The key to the proper interpretation of the Act of Congress is its policy and purpose.   The object of the law was to establish a system of national banking institutions, in order to provide a uniform and secure currency for the people, and to facilitate the operations of the Treasury of the United States.   The capital of each of the banks in this system was to be furnished entirely by private individuals; but, for the protection of the government and the people, it was required that this capital, so far as it was the security for its circulating notes, should be invested in the bonds of the United States. These bonds were not subjects of taxation; and neither the banks, themselves, nor their capital, however invested, nor the shares of stock therein held by individuals, could be taxed by the states in which they were located without the consent of Congress, being exempted from the power of the states in this respect, because these banks were means and agencies established by Congress in execution of the powers of the government of the United States.   It was deemed consistent, however, with these national uses, and otherwise expedient, to grant to the states the authority to tax them within the limits of a rule prescribed by the law.   In fixing these limits it became necessary to prohibit the states from imposing such a burden as would prevent the capital of individuals from freely seeking investment in institutions which it was the express object of the law to establish and promote.   The business of banking, including all the operations which distinguish it, might be carried on under state laws, either by corporations or private persons, and capital in the form of money might be invested and employed by individual citizens in many single and separate operations forming substantial parts of the business of banking.   A tax upon the money of individuals, invested in the form of shares of stock in national banks, would

diminish their value as an investment and drive the capital so invested from this employment, if at the same time similar investments and similar employments under the authority of state laws were exempt from an equal burden. The main purpose, therefore, of Congress, in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the Act of Congress is to be read in the light of this policy. Applying this rule of construction, we are led, in the first place, to consider the meaning of the words 'other moneyed capital,' as used in the statute. Of course, it includes shares in national banks; the use of the word 'other' requires that. If bank shares were not 'moneyed capital,' the word 'other' in this connection would be without significance. But 'moneyed capital' does not mean all capital the value of which is measured in terms of money. In this sense all kinds of real and personal property would be embraced by it, for they all have an estimated value as the subjects of sale. Neither does it necessarily include all forms of investment in which the interest of the owner is expressed in money. Shares of stock in railroad companies, mining companies, manufacturing companies, and other corporations, are represented by certificates showing that the owner is entitled to an interest, expressed in money value, in the entire capital and property of the corporation, but the property of the corporation which constitutes its invested capital may consist mainly of real and personal property, which, in the hands of individuals, no one would think of calling 'moneyed capital,' and its business may not consist in any kind of dealing in money, or commercial representatives of money. So far as the policy of the government in reference to national banks is concerned, it is indifferent how the states may choose to tax such corporations as those just mentioned, or the interest of individuals in them, or whether they should

be taxed at all.  Whether property interests in railroads, in manufacturing enterprises, in mining investments, and others of that description, are taxed or exempt from taxation, in the contemplation of the law, would have no effect upon the success of national banks.  There is no reason, therefore, to suppose that Congress intended, in respect to these matters, to interfere with the power and policy of the states.''

And in the case of *Aberdeen Bank* v. *Chehalis County,* above cited, Mr. Justice Shires said: ''The conclusions to be deduced from these decisions are that money invested in corporations or in individual enterprises that carry on the business of railroads, of manufacturing enterprises, mining investments, and investments in mortgages, does not come into competition with the business of national banks, and is not therefore within the meaning .of the Act of Congress; that such stock as those in insurance companies may be legitimately taxed on income instead of on value, because such companies are not competitors for business with national banks; and that exemptions, however large, of deposits in savings banks, or of moneys belonging to charitable institutions, if exempted for reasons of public policy and not as unfriendly discrimination against investments in national bank shares, should not be regarded as forbidden by section 5219 of the Revised Statutes of the United States.''

The case of *First Nat. Bank of Guthrie Center* v. *Anderson, supra,* contains the latest expression of the supreme court in construction of the meaning of the language employed in the Act.  In that case it is held that ''The purpose of the restriction is to render it impossible for any state, in taxing the shares, to create and foster an unequal and unfriendly competition with national banks, *by favoring shareholders in state banks or individuals interested in private banking or engaged in operations or investments normally common to the business of banking.''*  (See, also, *Mercantile Nat. Bank* v. *New York, supra.*)

Recognizing and applying this annunciation of the supreme court as the correct rule, the only justification for complaint on the part of the plaintiff arises with respect to the classifi-

cation of the property of the Miles Trust & Realty Company for purposes of taxation. The investments of individuals named come clearly within the exception of the statute, as do likewise those of the Custer County Building & Loan Association.

In the *Dawson County Case,* Mr. Chief Justice Callaway, speaking for this court, said: "That it has been and is the policy of this state to encourage and foster building and loan associations is beyond doubt. These, like savings banks, which are favored in some states for that reason, are institutions tending to encourage industry and thrift, the promotion of which is to the obvious interest of the state. Our statutes respecting building and loan associations, while very imperfect, indicate that these associations have been the subject of special solicitude on the part of the law-making body; and, as we have seen from the foregoing authorities, the state in respect of taxation may favor them if it sees fit."

Neither state banks nor individuals, copartnerships, corporations nor associations engaged in banking within the state are to be favored as against national banks. And here it appears that state banks and banking institutions are classified for purposes of taxation on identically the same basis as are national banks. The character of discrimination intended to be enjoined must be held to relate only to such business as is properly classed as that of banking. It does not refer to ordinary investments made in the course of business operations by manufacturing, industrial or commercial institutions. The business of such organizations is not that of banking, although they may, from time to time, accept promissory notes in payment of debts due them with or without mortgage security therefor, or make independent investments of like character. The charter of the Miles Trust & Realty Company does not authorize it to conduct any character of business which would come into competition with the business of national banks, and were it to do so, its acts in that respect would be *ultra vires.* Should it be found to have exceeded its authority in the conduct of business, such fact would not warrant a recovery by

the plaintiff in this action. As before stated, the inhibition is directed against discrimination in state legislative enactments.

We are of opinion that it was the intent and purpose of Congress to exempt from the operation of the federal Act individuals, copartnerships, corporations and associations whose primary business is not that of banking, or whose business operations or investments may not be considered as normally common to the banking business, and that neither individuals, corporations, copartnerships nor associations engaged in other activities than banking are to be considered as engaged in the banking business in competition with national banks simply because in the conduct of their affairs they make occasional loans, either secured or unsecured.

In application of the law to the facts, it is clear that the Miles Trust & Realty Company is not a state bank; neither can it be classed as an individual or corporation interested in private banking; nor is it engaged in operations or investments *common to the business of banking.*

From an examination of our Classification Act, it is manifest that no discrimination such as is complained of by the plaintiff is made or was intended. Class 5 expressly excludes "moneyed capital employed in the banking business by any banking corporation or individual in this state," and Class 6 includes all shares of stock of national banking associations and all other moneyed capital employed in the conduct of a banking business in the state by any other banking corporation, association, or individual. It must be apparent from a reading of these subdivisions of the section that no discrimination was made or intended against national banks.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS, concur.

Cause taken to supreme court of the United States on writ of error May 17, 1926.