CENTRAL NAT. BANK OF TOPEKA, KAN., v. McFARLAND, County Treasurer, et al.

District Court, D. Kansas, First Division. February 2, 1927.

No. 2973.

1. Taxation �köm10—States cannot tax national banks, unless authorized to do so by federal government.

It is beyond the power of the state to tax national banks at all, unless authorized and empowered to do so by the federal government.

2. Taxation �köm10—State's power to tax national banks must be exercised in manner and form expressed in warrant of authority to state.

Power of state to tax national banks must be exercised in the manner and form prescribed in warrant of authority to state, or the exercise of power attempted will be held void and nonenforceable.

3. Taxation �köm12—Kansas tax on stock of national bank held invalid, in view of manner of taxing other moneys and credits (Comp. St. § 9784; Rev. St. Kan. 79–1101; Laws Kan. 1925, c. 273; c. 277, §§ 1, 2, as amended by c. 278).

Under Act June 3, 1864, § 41, as amended by Act Feb. 10, 1868 (Comp. St. § 9784), relating to the taxation of national banks, the tax imposed on capital stock of national bank by Rev. St. Kan. 79–1101, is unlawful, in view of tax on other moneys and credits under Laws Kan. 1925, c. 273, and chapter 277, §§ 1, 2, as amended by chapter 278, notwithstanding amendment of state Constitution authorizing Legislature to classify and tax evidences of debt.

4. Constitutional law �köm38—Validity of statute must be determined by what may be done under it, rather than by that actually done.

The validity of an act must be measured by what may be done under it, and not by what is actually done.

At Law. Action by the Central National Bank of Topeka, Kan., against Paul T. McFarland, as County Treasurer of Shawnee County, Kan., and others. Judgment for plaintiff.

Wheeler, Brewster & Hunt, of Topeka, Kan., for plaintiff.

Eugene S. Quinton, of Topeka, Kan., for defendants.

POLLOCK, District Judge. This is an action at law, brought by plaintiff against the lawful taxing and collecting authorities and agents of the county of Shawnee, this state, to recover moneys paid by plaintiff on shares of its capital stock for the shareholders, as it is by law provided may be done, the taxes having been paid by the bank under protest, and, as it is by the bank asserted, to have been levied and collection enforced in violation of the authority conferred by the government on the state and its representatives and agents to tax such property at all. [1, 2] Of course, it is and must be conceded the settled law of the land, as national banks are instrumentalities of government and moneys invested in the shares of stock of such governmental agencies, it is utterly and absolutely beyond the power of the state to tax the same at all, unless thereunto authorized and empowered by the sovereign government. First National Bank v. Anderson, 269 U. S. 341, 46 S. Ct. 135, 70 L. Ed. 295; Des Moines Bank v. Fairweather, 263 U. S. 103, 44 S. Ct. 23, 68 L. Ed. 191; People v. Weaver, 100 U. S. 539, 25 L. Ed. 705; Rosenblatt v. Johnston, 104 U. S. 462, 26 L. Ed. 832; Mercantile National Bank v. New York, 121 U. S. 138, 7 S. Ct. 826, 30 L. Ed. 895; Talbott v. Silver Bow County, 139 U. S. 438, 440, 11 S. Ct. 594, 35 L. Ed. 210; Owensboro National Bank v. Owensboro, 173 U. S. 664, 669, 19 S. Ct. 537, 43 L. Ed. 850; First National Bank of Gulfport v. Adams, 258 U. S. 362, 42 S. Ct. 323, 66 L. Ed. 661, and many other cases. Hence the power of the state to proceed at all must be when the authority from the government to exact taxes from a national bank or its shareholders is found to confer the right to enforce the tax imposed by the state in manner and form as expressed in the warrant of authority to the state, or the exercise of the power at-

tempted will be held void and nonenforceable.

The authority relied upon by the state in this instance is found in the Act of Congress of June 3, 1864, 13 Stat. at Large, 111, § 41, as amended by Act of Congress of February 10, 1868, 15 Stat. at Large, 34 (Comp. St. § 9784), reading as follows:

"Nothing herein shall prevent · all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

Heretofore there has been filed, presented, and ruled a demurrer to the petition of the plantiff, which challenges the jurisdiction of this court to ascertain this law action, the right of the plaintiff to maintain the action, and the sufficiency of the allegations of the petition to warrant the recovery prayed. This demurrer being overruled and denied, the defendants have answered, and, a jury being waived, the case has been heard on the evidence and the briefs and arguments of counsel, and submitted for decision.

The classification of banks of all description, and certain other institutions, for taxing purposes, is found in section 79—1101, Revised Statutes of the State of 1923, and provides for the assessment of the institutions therein classified, including national banks, at the ad valorem value of the stock, surplus, and undivided profits as of March 1st of the current tax year. This statute of the state was amended by chapter 276, Laws 1925, but that amendment became effective March 17, 1925, and has no application to the tax involved in this action.

The taxable value of the shares of stock of the plaintiff bank, as determined under this state law, March 1, 1925, in this case,

was $418,700, and the rate imposed on this valuation was $3.23 per $100 valuation. Now, as has been seen, the power of the state to tax this assessed value is limited to a rate not greater than was assessed against other moneys and credits in the hands of individual citizens of the state employed in a like business done by national banks. Hence any act of the Legislature of the state which attempts to authorize the taxing powers of the state to levy any tax on the money value of the shares of plaintiff attempted to be taxed in this state, in excess of that authorized by the Congress, is void for want of power. Any attempt to so do by the representatives of the state is illegal and void. However, as the state law governs and controls the officials and agents of the state in the levy and collection of taxes on all classes of property, save that which is permitted by the government to be taxed by the state, it is clear, if by state law the same class or character of money and credits that is found invested in the shares of national banks is required to be taxed at a rate less than that charged against the plaintiff bank on its shares, when such moneys, funds, and credits are taxed in the hands of individuals employed in competition with national banks, it is clear such discrimination against the plaintiff and its shareholders as to compel the holding that the permission granted by the government to the state to tax shares in its national banks has been exceeded.

[3] Now the reliance of the plaintiff in this case is not based upon any error in the assessed valuation of its shares. This is conceded to be fair and reasonable. But the contention is that the authority conferred by Congress upon the state to tax its shares at all was exceeded in this: That the shares were assessed at their ad valorem value as provided by the state laws, in this case $3.23 per $100 valuation, which is a rate greater than is by the laws of the state levied upon and collected from other moneyed capital in the hands of individual citizens of the state.

To sustain this contention the plaintiff points out certain statutes of the state on which it relies to show the state was exceeding the authority by Congress conferred upon it. Among these are notably what is known as the intangible tax law of this state, chapter 277, Session Laws 1925, as amended by chapter 278, same Laws, which, after in section 1 of said act defining the terms "money and credits" as follows:

"That for the purpose of this act the term 'money,' shall mean and include gold

and silver coin, United States treasury notes, bank notes and other forms of currency in common use. The term 'credits,' shall mean and include notes, mortgages, foreign stocks, bonds, annuities, royalties, contracts, copyrights, claims secured by deeds and every liquidated claim and demand for money or other valuable thing except notes or obligations secured by mortgages on real estate, which mortgages have been recorded in this state, and a registration fee or tax paid thereon, and shares of stock upon which taxes are otherwise payable under the laws of this state: Provided, shares or stock in building and loan associations, other than permanent shares or stock, shall be deemed credits and shall be classified as money on deposit, for the full amount of the cash withdrawal value of the same at the time of the levy of the tax herein provided for,"

—by section 2 prescribes what annual tax shall be levied upon moneys and credits as so defined, as follows:

"That money and credits as herein before defined shall hereafter be subject to an annual tax of 25 cents per annum on each $100 of the fair cash value thereof; and shall hereafter be exempt from all other taxation: Provided, that nothing in this act shall be construed to apply to money or credits, as herein defined, belonging to persons or to corporations incorporated under the laws of this state, the taxation of which is otherwise provided for by law, or to any national banking association, or the stock thereof."

Now that the terms "money and credits," as defined in this act, may be employed in the same manner and in the conduct of the same kinds of business by individual citizens of the state as the money invested by shareholders is employed by national banks, it is entirely too clear for argument. This is another case of res ipsa loquitur. Yet money capital so employed by an individual citizen in making loans direct or in combination with his fellows pays only 25 cents per $100, and the banking corporation must pay upon its funds so employed in this case $3.23 on the $100 valuation.

[4] Again, by virtue of chapter 273, Session Laws of the state of 1925, individual citizens of the state may personally or in combination with others employ their moneyed capital in the making of mortgage loans and by the simple payment of a registration fee on such mortgage of 25 cents per $100 make such loans or investments free from all subsequent taxes, no matter how long said mortgage may run or how long such secured debts

may remain outstanding. Again, while such mortgages could to a certain extent be held by national banks, yet all of its funds cannot be so employed, as the funds of other individuals and combinations may be. When we come to measure the validity of an act done in the exercise of a power conferred, it is not determined by what is actually done thereunder, but what may be done.

I am convinced, from the acts of the Legislature of the state above referred to, thereunder the authority conferred by Congress on the state to tax national banks and their shares is and may be violated, and that capital of the citizen so invested is being discriminated against in the taxation of other property employed in similar manner. The same conclusion is reached by a consideration of the actual facts known and proven to exist in the case.

The answer of the state to the contentions so made by plaintiff is this: An amendment to the Constitution of the state, adopted in 1924 (see Laws 1923, c. 255, § 1), reads as follows:

"The Legislature shall provide for a uniform and equal rate of assessment and taxation, except that mineral products, money, mortgages, notes and other evidence of debt may be classified and taxed uniformly as to class as the Legislature shall provide."

Given this power of classification in express terms by the organic law of the state, that the Legislature had the right to classify national banks with all other banks for the purpose of taxation, as is done in this case, and that the Supreme Court of the state is the sole judge of the power to make such classifications, as was done in this case, and that the validity of such classification was submitted to the Supreme Court of the state in the case of Davis-Wellcome Mortgage Co. v. Haynes, 119 Kan. 1, 237 P. 918, and was therein upheld. However, the question there presented has no application whatever to national banks, or shares in national banking associations. Conceding the correctness of the holding there made as applicable to all property within the state subject to the general power of the state to tax, as were the facts in that case, yet the very law proclaimed in that case tends to convince the mind of the soundness of the position taken by the plaintiff in this case. Points 3 and 5 of the syllabi in that case, which is the law of the case, read as follows:

"3. Same—Money and Credits—Application of Tax System to Corporations.— Kansas corporations having capital stock are

required to pay in behalf of their stockholders a tax based upon the value of all the outstanding shares, with such other deductions as the statute allows, but without deduction on account of its ownership of money and credits, being excepted from the operation of the general statute providing for taxing such property at the rate of 25 cents for each $100."

"5. *Same—Money and Credits—Act Constitutional.*—No violation of constitutional law is involved in requiring a corporation to pay in behalf of its stockholders a tax upon the total value of its outstanding shares, without deduction because of owning money and credits which in the hands of ordinary taxpayers would be subject only to a tax of 25 cents on each $100 of value."

What is plainly affirmed in these statements of the law of that case concerning the general power of taxation and the right of classification of property within the state can have and does have no application whatever to the qualified power of the state to impose any tax at all upon national banks or shares held in such banks. In this case the right of the state to tax is by Congress restricted and limited, and this power must be taken and exercised by the state cum onere or not at all.

It follows the right conferred by Congress on the state to tax the property of the plaintiff bank in this case or its shares within the state on condition only has in the enactment of its laws and in practice been violated. Therefore the tax imposed in this case on the plaintiff is without power, and judgment for the plaintiff as prayed must go.

It is so ordered.