MORRIS & ESSEX INVESTMENT CO., INC., A NEW JERSEY CORPORATION, PETITIONER-APPELLANT, v. DIRECTOR OF DIVISION OF TAXATION, RESPONDENT.

Argued April 25, 1960—Decided June 6, 1960.

*Mr. Donald B. Jones* argued the cause for the petitioner-appellant (*Mr. Frank W. Hoak,* on the brief).

*Mr. Murry Brochin* argued the cause for the respondent (*Mr. David D. Furman,* Attorney General, attorney; *Mr. Murry Brochin,* on the brief).

The opinion of the court was delivered by

Proctor, J. The single question presented by this case is whether the petitioner Morris & Essex Investment Co., Inc., a New Jersey corporation engaged solely in lending money on the security of second mortgage liens on real estate, is taxable under the Financial Business Tax Law. *L.* 1946, *c.* 174, *N. J. S. A.* 54:10*B*–1 *et seq.* The Director of the Division of Taxation determined that it was so taxable, and the Division of Tax Appeals affirmed. The petitioner's appeal to the Appellate Division was certified here on our own motion before consideration there.

The Financial Business Tax Law imposes on "every person, copartnership, association and corporation doing a financial business in this State" an annual excise tax measured by net worth. *L.* 1946, *c.* 174, § 3, *N. J. S. A.* 54:10*B*–3. The petitioner contends it is not in fact doing a financial business within the meaning of the act. The taxing authorities assert that it is, and also argue that in the act the Legislature set out a list of enterprises and activities which it deemed to be "doing a financial business"; that it included the petitioner in that list, and that it therefore foreclosed a factual examination at this time into the question whether the petitioner is in fact doing a financial business. The present controversy therefore focuses on the act's definition of "financial business," which states:

"For the purposes of this act, unless the context otherwise requires:

\* \* \* \* \* \* \* \*

(b) 'Financial business' shall mean all business enterprise which is (1) in substantial competition with the business of national banks and which (2) employs moneyed capital with the object of making profit by its use as money, through discounting and negotiating

promissory notes, drafts, bills of exchange and other evidences of debt; buying and selling exchange; making of or dealing in secured or unsecured loans and discounts; dealing in securities and shares of corporate stock by purchasing and selling such securities and stock without recourse, solely upon the order and for the account of customers; or investing and reinvesting in marketable obligations evidencing indebtedness of any person, copartnership, association or corporation in the form of bonds, notes or debentures commonly known as investment securities; or dealing in or underwriting obligations of the United States, any State or any political subdivision thereof, or of a corporate instrumentality of any of them. This shall include, without limitation of the foregoing, businesses commonly known as industrial banks, dealers in commercial paper and acceptances, sales finance, personal finance, small loan and mortgage financing businesses, as well as any other enterprise employing moneyed capital coming into competition with the business of national banks; *provided*, that the holding of bonds, notes, or other evidences of indebtedness by individual persons not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with the business of national banks, shall not be deemed financial business. Nor shall 'financial business' include national banks, production credit associations organized under the Farm Credit Act of 1933, stock and mutual insurance companies duly authorized to transact business in this State, security brokers or dealers or investment companies or bankers not employing moneyed capital coming into competition with the business of national banks, or any of the following entities organized under the laws of this State: credit unions, savings banks, savings and loan and building and loan associations, pawnbrokers, and State banks and trust companies." *L.* 1946, *c.* 174, § 2, *N. J. S. A.* 54:10B–2.

It is apparent that the basic class of enterprises within the definition, and, as such, subject to the tax, are those employing moneyed capital for profit, in specified ways, in substantial competition with the business of national banks. A short background of history is necessary for a full understanding of the statutory classification.

Since 1866 the New Jersey statutes have provided for taxation of the common capital stock of national banks, and of banks organized under the laws of this State. *L.* 1866, *p.* 1078, § 16. Since 1899 there has been a similar tax on trust companies organized under the laws of this State. *L.* 1899, *p.* 450, § 29. *Mechanics' National Bank of Trenton*

*v. Baker,* 65 *N. J. L.* 113 (*Sup. Ct.* 1900), affirmed *Id.* 549 (*E. & A.* 1901). National and state banks and trust companies are now taxed under *R. S.* 54:9–1 *et seq.* Prior to 1945, stock or other evidence of ownership in other financial businesses was taxed to its owner under the general *ad valorem* property tax. *R. S.* 54:4–1. In 1945, however, the Legislature amended the tax law to exempt intangible personal property from the general tax. *L.* 1945, *c.* 163, *R. S.* 54:4–1 as amended. As a result, while the stock of national and state banks and trust companies remained taxable as before, interest in other financial businesses, being intangible personalty, went untaxed. Incorporated financial businesses, other than those included in the Bank Stock Act, were taxed under the Corporation Business Tax Law, but at a rate substantially below that imposed by the Bank Stock Act. *L.* 1945, *c.* 162, *N. J. S. A.* 54:10A–1 *et seq.* Unincorporated financial enterprises escaped taxation entirely, except under the general property tax, from which the bulk of their assets was exempt. *R. S.* 54:4–1 as amended by *L.* 1945, *c.* 163.

A serious threat to the validity of the Bank Stock Act, and to the one million dollars in annual revenues it produced, grew out of the new exemption of intangibles. The threat was posed by a federal statute that limited the permissible scope of state taxation of the shares of national banks. 12 *U. S. C. A.* § 548.

 National banks are not merely private businesses, but rather are agencies of the United States, created by it to promote its fiscal policies, and financed by private capital. Hence the national banks and their shares are taxable by the states only with the consent of Congress, and then only in accordance with such restrictions as Congress may place. *First National Bank of Guthrie Center v. Anderson,* 269 *U. S.* 341, 46 *S. Ct.* 135, 70 *L. Ed.* 295 (1926). The federal law limiting state taxation permits a tax of the kind imposed by this State's Bank Stock Act, but with the restriction that

"the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks: *Provided*, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section." 12 *U. S. C. A.* § 548(*b*).

The purpose of the federal restriction is to prevent taxation of shares in national banks that would "create and foster an unequal and unfriendly competition with national banks, by favoring shareholders in State banks or individuals interested in private banking or engaged in operations and investments normally common to the business of banking." *First National Bank of Guthrie v. Anderson, supra*, 269 *U. S.*, at *pages* 347–348, 46 *S. Ct.*, at *page* 138, 70 *L. Ed.*, at *pages* 302–303. The focus here is on competition among financial businesses for investment capital, and the danger sought to be averted is that such capital might abandon the national banks for other financial enterprises if the latter were made relatively more profitable by preferential tax treatment. *Mercantile National Bank of New York v. Mayor, etc. of New York*, 121 *U. S.* 138, 7 *S. Ct.* 826, 30 *L. Ed.* 895 (1887). Ultimate attention, however, is directed by the federal provision to the question whether other moneyed capital employed in competition with the *business* of national banks receives favored tax treatment, for it is primarily that capital which is attracted to or dissuaded from investment in national banks by the relative profitability of the other financial enterprises available for investment. Thus, for example, savings bank deposits were early held not required by the federal provision to be taxed by the states in order to avoid discrimination against the national banks. Such deposits, although surely "moneyed capital," were thought to come from a source so vastly different from the source of capital available for investment in national banks that no threat of competition was

seen. *Mercantile National Bank of New York v. Mayor, etc. of New York, supra.* See also *First National Bank of Shreveport v. Louisiana Tax Commission,* 289 *U. S.* 60, 53 *S. Ct.* 511, 77 *L. Ed.* 1030 (1933). And so, the Financial Business Tax Law also exempts savings banks. *L.* 1946, *c.* 174, § 2. *N. J. S. A.* 54:10*B*–2.

The Commission on State Tax Policy recognized the threat to the validity of the Bank Stock Act posed by the repeal of the tax on intangibles. See the Commission's *First Report, pp.* 1–39 (1946). On its recommendation, therefore, the Legislature enacted the Financial Business Tax Law in 1946.

The subsection of the act, set out earlier in this opinion, which defines the "financial business" that is made subject to taxation, contains three sentences. *N. J. S. A.* 54:10*B*–2(*b*). The first establishes two criteria for inclusion of a particular enterprise, (1) that it be in substantial competition with the business of national banks, and (2) that it employ moneyed capital, for profit, by its use as money, through, among other things, "making of or dealing in secured or unsecured loans and discounts."

█ If the definitional subsection stopped there, it would be an open question whether a particular enterprise sought to be taxed satisfied these two criteria, and that question would be one of fact to be answered in each litigated case. But the subsection does not stop there. The next sentence, in pertinent part, reads:

"This shall include, without limitation of the foregoing, businesses commonly known as industrial banks, dealers in commercial paper and acceptances, sales finance, personal finance, small loan and *mortgage financing businesses,* as well as any *other* enterprise employing moneyed capital coming into competition with the business of national banks * * *." (Emphasis supplied)

It seems clear to us that the Legislature intended that "mortgage financing businesses" and the others listed in the quoted sentence be taken as "financial business" and thus subject to taxation. The "as well as" clause was intended to encompass other enterprises that might satisfy the basic

statutory definition, but which were infeasible to list as a class. The fact that the words "coming into competition" were used here, while the words "in substantial competition" were used in the first sentence of the subsection, is of no significance. The federal provision says "coming into competition," 12 *U. S. C. A.* § 548(*b*), and the United States Supreme Court has ruled that these words mean "in substantial competition." *First National Bank of Shreveport v. Louisiana Tax Commission, supra,* 289 *U. S.,* at *page* 65, 53 *S. Ct.,* at *page* 513, 77 *L. Ed.,* at *page* 1034; *First National Bank of Guthrie Center v. Anderson, supra,* 269 *U. S.,* at *page* 348, 46 *S. Ct.,* at *page* 138, 70 *L. Ed.,* at *page* 303.

Our conclusion, that "mortgage financing businesses" were meant to be taxable without examination into the question whether a particular mortgage financing business is in fact "doing a financial business" within the statute's basic definition, is supported both by the language used in the subsection in question, and by the intent of the Legislature as it can be gathered from the relevant legislative history.

As regards the language used: The first sentence of the subsection begins " 'Financial business' shall mean \* \* \*." The second sentence begins "This shall include \* \* \*." Clearly the intent is that the enterprises *included* by the second sentence should be taken as some of those that fit within the first sentence's definition of "financial business."

A simple example should illustrate the point. If one should say that "book" shall mean an object (1) made of paper, (2) that is printed on and (3) bound between covers, it is still a question of fact whether a "paperback" is a "book." The answer is found only when "paperback" is tested by the three criteria set out to define "book." But the factual question would be determined if one were to follow the above definition with: "This shall include objects commonly known as magazines, pamphlets and paperbacks." *"This* shall include" means *"Book, as defined above,* shall

include." If one really meant to leave open the question whether a certain "paperback" is a "book," one would not use the second sentence at all.

To extend the illustration, if the second sentence read: "This shall include objects commonly known as magazines, pamphlets and paperbacks, as well as any other object made of paper that is printed on and bound between covers," the conclusion that a "paperback" is a "book" is further strengthened. The words "object made of paper that is printed on and bound between covers" define "book." Thus the phrase, "as well as any other object made * * *" *etc.,* equals "as well as any other" *book*. As a result the sentence in effect reads: "This shall include magazines, pamphlets and paperbacks, as well as any other book." If magazines, pamphlets and paperbacks were not books, the words "as well as any other" would be meaningless. For another example, to say "blue and green, as well as any other colors" is necessarily to assume and to declare that blue and green are colors. See *Mercantile National Bank of New York v. Mayor, etc. of New York, supra,* 121 *U. S.,* at *page* 155, 7 *S. Ct.,* at *page* 835, 30 *L. Ed.,* at *page* 901.

In every pertinent respect, the examples we have used and the statutory subsection in question are identical, and the same analysis is valid for all of them. The analysis makes clear that "mortgage financing businesses" are declared by the subsection to be in "financial business," and, as such, taxable.

If more support for our conclusion were needed, it is available in the legislative history of the Financial Business Tax Law.

█ The introducer's statement appended to 1946 *Assembly Bill* 283, which became the act, outlines the purposes of the act as we have described them above. It includes the following language:

"The purpose of this act is to carry out the recommendations contained in the First Report of the Commission on State Tax Policy (submitted February 28, 1946)."

This statement is relevant evidence on any proper issue as to the legislative intent, although a considered judgment must be exercised in determining the weight to be attached to it. *Deaney v. Linen Thread Co.*, 19 *N. J.* 578 (1955).

██ The *First Report*, referred to above, shows clearly that the Commission on State Tax Policy recommended that all mortgage loan companies be taxed by the proposed act, without an examination in every case into the question whether a particular mortgage loan company competes with national banks. The following conclusory language at *page* xix of the *First Report* is clear:

> "*The Commission unanimously recommends:*
> I. THAT THE FOLLOWING FINANCIAL INSTITUTIONS CONSIDERED AS A GROUP, REPRESENT SUBSTANTIAL MONEYED CAPITAL IN COMPETITION WITH NATIONAL BANKS WITHIN THE INTENT OF [12 *U. S. C. A.* § 548] AND SHOULD BE REMOVED FROM THE PRESENT EXEMPTION IN ORDER TO SATISFY THE REQUIREMENTS OF THE FEDERAL RULE:
> A. *Shares of Stock in the following types of corporate enterprise:*
> * * * * * * * *
> 6. Mortgage loan companies."

There is no reason to believe that the recommendation of the Commission on State Tax Policy to list a class of taxable enterprise was rejected by the Legislature and a different intent adopted in its stead. There is no suggestion by the petitioner of constitutional invalidity of the classification made by the Legislature.

██ The sole remaining question to be answered is whether the petitioner is a mortgage financing business within the meaning of *N. J. S. A.* 54:10B–2(*b*). No definition of the term is given in the act, and the words must be taken according to their ordinary and well-understood meaning.

Obviously, a company whose business is lending money on the security of second mortgages on real property is in ordinary meaning a mortgage financing business. No distinction is made in the ordinary meaning of the words, or expressly in the statute, between first and second mortgages.

The petitioner argues, however, that the statute must be read to include only companies dealing in *first* mortgages, because the national banks lend money on only *first* mortgages, and thus only first mortgage companies compete with the national banks.

Assuming that national banks take only first mortgages and the petitioner only second mortgages, it does not follow that they are not in competition. From the point of view of a landowner with an existing lien held by a national bank, who wishes to borrow additional money, they are certainly in competition. He may recast his first mortgage, obtain an additional loan from the national bank on other security, or seek a second mortgage with someone else.

From the point of view of a prospective homeowner also, second mortgage lenders and national banks are in competition. He is in a position to seek the maximum loan a national bank will give him on the security of his property, or to seek a small secured loan from the bank and then obtain additional money from a second mortgage company by giving it a subsequent lien. This may seem to be a fanciful case, but it would not be if second mortgage companies escaped a tax burden thrown on the national banks and thus could operate profitably while charging a smaller interest rate for money lent. It was just this kind of differential in profitability, and therefore in ability to attract capital, that the federal statutory provision was designed to guard against.

We believe that the ordinary and well-understood meaning of the words "mortgage financing businesses," as used in *N. J. S. A.* 54:10B–2(*b*), must be taken to include companies lending money on the security of second mortgages. But even if this were not so, we believe that such businesses in fact compete with national banks and therefore are made taxable as "any other enterprise employing moneyed capital coming into competition with the business of national banks."

Affirmed.

36 

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.