## NORTHWEST ACCEPTANCE CORP. *v.* COMMISSION

Frederick Torp and Diarmuid F. O'Scannlain, Davies, Biggs, Strayer, Stoel and Boley, Portland, Oregon, represented plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, Oregon, represented defendant.

Decision for plaintiff rendered January 14, 1969.

EDWARD H. HOWELL, Judge.

The only issue presented is whether the plaintiff is a "financial corporation" and subject to a corporate

excise tax of eight percent on net income imposed by ORS 317.060. The plaintiff contends that it is not a financial corporation within the purview of ORS 317.060 and that its corporate excise tax should be computed at six percent under ORS 317.070.

A "financial institution" or "financial corporation" is defined by ORS 317.010(10) as "every corporation whose principal business is in direct competition with national and state banks."

Plaintiff's principal business is the purchase of conditional sales contracts of logging and heavy construction equipment.

The plaintiff was incorporated in 1949 to finance heavy equipment sold by its affiliate corporation, Automotive Equipment Company, which was founded by the Courtemanche family in McMinnville in 1916 to sell farm equipment. Subsequently Automotive Equipment Company expanded its operations to include the sale of heavy duty logging and construction equipment, sale of new and used trucks, and providing parts and service. Its headquarters are in Portland with branch offices in Oregon, Washington and California.

The plaintiff, as the sales finance company for Automotive Equipment Company, was established in 1949 because it became difficult for Automotive Equipment Company "to obtain funds to carry the paper generated by the sale of heavy equipment" and for the further reason that banks would be able to make loans directly to each of them as individual companies. Prior to 1961 the plaintiff's activities were confined to financing the sales made by Automotive Equipment Company. In 1961 the plaintiff's activities were extended to include financing the sales made by other

dealers in logging and heavy construction equipment. Ninety-five percent of Automotive Equipment Company's business north of Redding, California, is handled by plaintiff, with ninety percent of the contracts representing sales of equipment used in the lumber and construction business. For the years involved herein, 1964 through 1967, Automotive Equipment Company accounted for the following percentages of plaintiff's total portfolio: 1964, 39.4 percent; 1965, 34.8 percent; 1966, 29.3 percent; 1967, 31.9 percent.

After the equipment purchaser enters into a contract with Automotive Equipment Company or other dealers, the contract is sold to plaintiff and the payments are made to plaintiff. The plaintiff purchases the contracts with funds borrowed from various banks on ninety-day unsecured notes.

The evidence indicated that several important distinctions exist between plaintiff's operations and those of state or national banks.

The cost to plaintiff to acquire funds to purchase contracts ranges from 8.3 percent to 8.7 percent as compared to 2.34 percent for state banks. The banks' rate of return is 6.3 percent compared to plaintiff's 11.72 percent. The plaintiff's loss ratio is 9.5 percent compared to .054 percent for state banks. The plaintiff leases logging equipment and banks do not. The plaintiff has no commercial banking facilities. The purchasers financed by plaintiff are greater risk customers than those normally handled by banks. The plaintiff accepts contracts with much longer terms than banks, financing up to 60 months. Thirty-five percent of the equipment plaintiff finances is used. Banks limit the credit on new log trucks to 36 months with shorter periods on used equipment and generally the 36-month loans are limited to depositors. The

plaintiff deals primarily with the individual purchaser and looks to him for liability while the banks rely upon the unconditional guarantee of the dealer in case of purchaser default.

One of the reasons the plaintiff is able to predominate in the area of financing long-term contracts for the purchase of heavy construction and logging equipment is its ability to dispose of repossessed equipment. According to the testimony, banks generally avoid this type of financing because of their inability to dispose of repossessions without the danger of substantial loss. Plaintiff on the other hand has the benefit of all the sales facilities of Automotive Equipment Company and its branch offices in California, Oregon and Washington to dispose of repossessed equipment.

■ In order to determine whether plaintiff is a financial institution within the meaning of ORS 317.010 (10) it is not necessary to look to decisions interpreting other state or federal statutes which are not the same as ORS 317.010(10), or where different types of financial institutions are involved. In *General Electric Credit Corporation v. State Tax Com.*, 231 Or 570, 373 P2d 974 (1962) the Oregon Supreme Court had the following to say concerning ORS 317.010(10) as it read at that time.①

"* * * But the definition of 'financial corporations' in ORS 317.010(10) fetters any effort by this court to make state law accord with newly develop-

---

① In *General Electric* the parties stipulated that the taxpayer was in direct competition with banks. The issue was whether the plaintiff was "lending money" under ORS 317.010(10), which at that time defined a financial institution as one "whose principal business is lending money in direct competition with national and state banks." The court held that the taxpayer's business of purchasing conditional sales contracts from retail merchants was not "lending money" within the meaning of the statute. The words "lending money" were deleted by Or Laws 1963, ch 571.

ing interpretations of RS 5219. [12 USC Sec 548 Revised Statutes Sec 5219.] Under the first assignment of error the only question we may consider is whether, by a fair interpretation of the words used in ORS 317.010(10), a corporation whose principal business is the purchase of conditional sales contracts from retail merchants—an activity stipulated to be in direct competition with national banks—is 'lending money.' "

The defendant cites the following cases involving whether the taxpayers were financial corporations: *Morris & Essex Investment Co., Inc. v. Director of Division of Taxation,* 33 NJ 24, 161 A2d 491 (1960); *Crown Financial Corporation v. McColgan,* 23 Cal2d 280, 144 P2d 331 (1943); and *Marble Mortgage Co. v. Franchise Tax Board,* 50 Cal Rptr 345 (Dist Ct App 1966). They are not applicable. The California statute involved in *Crown Financial* and *Marble Mortgage* did not attempt to define a financial corporation. The New Jersey statute in *Morris & Essex* specifically named "dealers in commercial paper and acceptances, sales finance, personal finance, small loan and mortgage financing businesses, as well as any other enterprise employing moneyed capital coming into competition with the business of national banks;" as being within the definition of a "financial business." 161 A2d at 493.

The Oregon statute is clear. It requires that the *principal business* of the taxpayer be in *direct* competition with national and state banks before the taxpayer may be classified as a financial corporation and taxed at the higher rate. The principal business of the plaintiff—the purchase of conditional sales contracts involving logging and heavy construction equipment—is not in direct competition with banks. The plaintiff called several witnesses with banking experi-

ence who testified concerning this feature. One of the witnesses, presently an official with the United States National Bank and familiar with the plaintiff's operations, testified that there was a difference in philosophy between banks and the plaintiff because of the plaintiff's practice of larger loans over longer periods of time. He stated categorically that his bank did not feel competition existed between his bank and the plaintiff. Another witness not associated with the plaintiff testified that in his opinion the banks made a "conscientious effort to avoid" competition in the field in which the plaintiff specializes. Another witness for the plaintiff testified to the same effect. The defendant offered no testimony to the contrary.

Because of the various differences mentioned between the plaintiff and commercial banks and the specialized field of financing in which the plaintiff operates, it is concluded that the plaintiff is not in direct competition with state or national banks. The order of the tax commission is set aside.