EVERS, J. T. C.
This matter concerns an assessment made under the Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq. (the act) for the fiscal year 1975. If it is determined that the taxpayer was a financial business corporation during the period in question, it would then be subject to the tax in the amount it would have been taxed under the Financial Business Tax Act (one-half of net worth) and the lower Corporation Business Tax Act rates. N.J.S.A. 54:10A-40.
N.J.S.A. 54:10A — 4(m), in pertinent part, provides:
*377 “Financial business corporation” shall mean any corporate enterprise which is (1) in substantial competition with the business of national banks and which (2) employs moneyed capital with the object of making profit by its use as money, through ... making of or dealing in secured or unsecured loans and discounts. ... This shall include, without limitation of the foregoing business commonly known as industrial banks, dealers in commercial paper and acceptances, sales, finance, personal finance, small loan and mortgage financing businesses, as well as any other enterprise employing moneyed capital coming into competition with the business of national banks; provided, that the holding of bonds, notes, or other evidences of indebtedness by individual persons not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with the business of national banks, shall not be deemed financial business.
This provision was derived from § 10B-2(b) of the Financial Business Tax Act of 1946 (N.J.S.A. 54:10B-1 et seq.) which was altered by L. 1975, c. 171, to exclude financial businesses operating under corporate form from the purview of the Financial Business Tax Act of 1946. The two provisions are identical, and thus with the amendment of N.J.S.A. 54:10B-2 such financial business corporations were taxed under the Corporation Business Tax Act as they were under the Financial Business Tax Act of 1946. N.J.S.A. 54:10A — 40 establishes that for the years 1976 through and including 1979 such corporations shall pay the greater of its 1975 financial business tax or its corporation business tax.
The underlying purpose of the special treatment accorded to financial business was set forth in Morris and Essex Investment Co. v. Director, 33 N.J. 24, 161 A.2d 491 (1960), in the court’s interpretation of N.J.S.A. 54:10B-2(b). Essentially, this special treatment guaranteed that businesses within the meaning of the provision in question did not receive a more favorable tax status than national banks. Id. at 30, 161 A.2d 491. Of particular importance herein is the court’s holding with respect to the second sentence of the controlling provision that reads in pertinent part:
This shall include, without limitation of the foregoing, businesses commonly known as industrial banks, dealers in commercial paper and acceptances, sales finance, personal finance, small loan and mortgage financing businesses, as well *378 as any other enterprise employing moneyed capital coming into competition with the business of national banks....
The court held that
It seems clear to us that the Legislature intended that “mortgage financing business” and the others listed in the quoted sentence be taken as “financial business” and thus subject to taxation. The “as well as” clause was intended to encompass other enterprises that might satisfy the basic statutory definition, but which were infeasible to list as a class...
Our conclusion, that “mortgage financing businesses” were meant to be taxable without examination into the question whether a particular mortgage financing business is in fact “doing a financial business" within the statute’s basic definition, is supported both by the language used in the subsection in question, and by the intent of the Legislature as it can be gathered from the relevant legislative history, [at 31-32, 161 A.2d 491],
In short, if a .taxpayer-corporation falls within the classification found in the second sentence of N.J.S.A. 54:10A-4(m), then it is per se subject to taxation as a financial business corporation.
In Walnut Realty Co. v. Director, 36 N.J. 365, 177 A.2d 745 (1962), the Supreme Court dealt with the issue of whether a particular mortgage financing company came within the second sentence of N.J.S.A. 54:10B-2(b). Taxpayer therein argued that its mortgage financing business was incidental to its real estate business. It maintained that it took mortgages on property either as purchase money mortgages or as an accommodation to friends and family. For the period in question. 1952-1958, the business was slowly decreasing in activity but the transactions were always handled in an arm’s length fashion. Of great significance to the instant matter was the fact that the taxpayer did not enter into any new mortgages after 1956 — two years before the last year in question. The court rejected the arguments of the taxpayer and specifically held that
Aside from the question whether it was doing a financial business after 1956, Walnut was no less a mortgage financing business merely because it did not make a new loan in any one year. It continued to operate for a profit and continued to reap the benefits of its mortgage financing. Furthermore, there is no evidence that it could not again begin investing in mortgage loans at any time, or, for that matter, that it made any attempt to divest itself of its mortgage investments. Thus, the company was also a “financial business” after 1956 as that term is used in the statute. Morris & Essex Invest. Co., supra.
As long as substantial sums of money originally invested in competition remain invested in mortgage loans, they are employed in competition with the business of national banks; for money so invested ties up a market otherwise *379 available to the business of such banks. If a corporation could invest $1,000,000 in a number of three-year mortgages and then be held taxable at rates below that of national banks for the latter two years, that tax treatment would be prejudicial to national banks throughout the period. The investments of national banks as reflected in stock values would be taxable at the higher Bank Stock Act rate while the corporation would be taxable at the lower Corporation Business Tax Act. [at 375, 177 A.2d 745]
The certificate of incorporation introduced into evidence herein stated that the objects for which the instant taxpayer was formed were:
To engage in the business of financing, selling, holding, assigning, transferring, pledging, discounting, purchasing or arranging for the acquisition of conditional sales contracts, retail installment contracts, retail budget accounts and time payment accounts, transferable or negotiable instruments, notes, obligations and all other evidences of indebtedness, underlying the retail and wholesale purchase of any and all commodities for commercial, business, industrial, personal and household use.
To engage in and to do any and all things necessary to operate a finance company generally.
Despite the undeniable fact that the taxpayer was a sales finance corporation it maintains that because for the year in question it was dormant, it was not a financial business corporation within the meaning of the act. The evidence at trial did clearly indicate that the taxpayer was becoming progressively less active.
The president and major stockholder of the taxpayer testified that the taxpayer-corporation was one of the several closely held affiliated corporations. Initially these corporations were actually borrowers of the taxpayer and also served as a source of outside borrowers. Prior to the period in question, customers of the affiliated corporations would finance purchases of the goods of the affiliated corporations by borrowing from the taxpayer. The testimony clearly indicated that at the height of the taxpayer’s financial activity the taxpayer would generate profit from lending money at interest rates above its capital source rates. Its capital source was a credit line with New Jersey Bank.
The precise period in question is April 1, 1975 to March 28, 1976. Taxpayer’s fiscal year ended on February 20. N.J.A.C. 18:7-2.10 (by virtue of N.J.S.A. 54:10A-15) provides that the tax be imposed on each calendar year or fiscal period of the taxpay *380 er. The taxpayer filed a short-period return for the January 1, 1975 to March 28, 1975 time frame on account of the previously discussed amendment of the Financial Business Tax Act.
Taxpayer’s federal income tax return stated that it had a gross income of $26,357.36, which was solely interest income derived from outstanding loans. It listed deductions for bad debts of $7,467.50, New Jersey franchise tax of $2,042.07, interest $4,801.63 and miscellaneous in the amount of $16,775.75. The bad debt deduction resulted from uncollectable accounts receivables due from outside borrowers that taxpayer concededly attempted to recoup during the period in question. The interest deduction was incurred by virtue of payment of its loans obtained through it credit line with New Jersey Bank. The miscellaneous deductions consisted of management fees, directors’ fees, bookkeeping and collection expenses, office expenses and professional fees. Deductions from gross income resulted in a net operating loss of $4,732.59.
The balance sheet of the company showed beginning balances of assets of $551.25 cash on hand and $310,378.21 in trade notes and accounts receivable. By the end of the period in question it showed $53,103.11 of cash on hand, and $28,136.98 in trade notes and accounts receivable, and “other investments” of $50,000. These “other investments” were never explained. For the period in question the beginning asset balance of $310,929.46 was reduced to $131,240.09.
The beginning liability balances consisted of $34,853.78 of accounts payable, $133,000 of mortgages and short term notes, a current tax liability of $38, and $6,900 in loans from shareholders. By the end of the year the accounts payable balance was reduced to $835 and the mortgage notes payable balance was reduced to $3,000. All other liabilities were extinguished.
The shareholder equity beginning balances consisted of $112,-800 in common stock, $1,831 paid in or capital surplus and $21,506.68 of unappropriated retained earnings. These balances were reduced by year’s end to $108,800 as to common stock and $16,774.09 retained earnings. The paid in or capital surplus remained unchanged.
*381 Despite this financial picture taxpayer maintained that because of its inactivity it was not a financial business corporation. Its argument was based on the fact that it deal almost exclusively with a related corporation. The facts clearly demonstrate that the taxpayer was not dead in the sense of being dissolved, merged or consolidated, but still remained a viable taxpaying entity that continued to make loans to an affiliated corporation at a margin above its credit line. This uncontroverted fact alone places the taxpayer within the second sentence of N.J.S.A. 54:10A — l(m). Furthermore, it was conceded by taxpayer that loans to unrelated debtors were still generating interest income during the period in question. The fact that no new loans were made for the period in question, except for those to its affiliated corporation (the average total amount outstanding of loans to the taxpayer’s affiliated corporation was $200,000), is of no moment.[1] By placing loans to its affiliated corporation at a percentage above its capital cost taxpayer was employing moneyed capital with the object of making a profit and was thereby in direct competition with national banks. It is also significant to note that it still placed loans with its affiliated corporation until 1978. Under these circumstances the Supreme Court’s language in Walnut Hill Realty, supra at 375, 177 A.2d 745, is worth repeating. It stated that the taxpayer therein:
... [w]as no less a mortgage financing business merely because it did not make a new loan in any one year. It continued to operate for a profit and continued to reap the benefits of its mortgage financing. Furthermore, there is no evidence that it could not again begin investing in mortgage loans of any kind, or for that matter, that it made any attempt to divest itself of its mortgage investments. .. .
*382 As long as substantial sums of money originally invested in competition remain invested in mortgage loans, they are employed in competition with the business of national banks; for money so invested ties up a market otherwise available to the business of such banks.
Accordingly, I find that despite the winding down of taxpayer’s business it remained an “enterprise employing moneyed capital coming into competition with the business of national banks” within the meaning of the second sentence of N.J.S.A. 54:10A-4(m). The Director’s determination is affirmed and judgment shall be entered accordingly.

It is also immaterial that these loans were unsecured since the text of N.J.S.A. 54:10A — 4(m) states that a financial business corporation within the meaning of the Corporation Business Tax Act encompasses an entity “which (2) employs moneyed capital with the object of making a profit by its use as money through . .. making of or dealing in secured or unsecured loans and discounts.... ” The taxpayer attempted to argue that the making of unsecured loans demonstrates that such unsecured lenders would not be placed in substantial competition with national banks. The Legislature has foreclosed the argument.