KUSKIN, J.T.C.
For tax years 1992 and 1993, plaintiff Chemical New Jersey Holdings, Inc. filed its corporation business tax (“CBT”) return as an investment company. See N.J.S.A. 54:10A-4(f), a provision of the Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -41 (the “CBT Act”). Defendant, Director of the New Jersey Division of Taxation (“Director”), determined that plaintiff did not satisfy the statutory requirements for taxation as an investment company and assessed tax accordingly. The amount of tax and interest assessed was $962,639.74. Plaintiff paid the assessment and appealed. Approximately one year after the appeal was filed, plaintiff abandoned its contention that it was an investment company and asserted that it should have been taxed as a financial business corporation as defined in N.J.S.A. 54:10A-4(m). In Chemical New Jersey Holdings, Inc. v. Director, Division of Taxation, 20 N.J.Tax 547 (Tax 2003), I held that plaintiffs effort to change the basis on which it sought to be taxed was not timely and denied plaintiffs appeal. The Appellate Division reversed in Chemical New Jersey Holdings, Inc. v. Director, Division of Taxation, 22 N.J.Tax 606 (App.Div.2004) and remanded the matter for determination as to whether plaintiff was entitled to be taxed as a financial business corporation. Pursuant to the remand, the parties submitted a joint stipulation of facts and briefs, and a hearing was conducted at which both parties presented testimony. This opinion relates to the remand proceedings.
If plaintiff qualified for treatment as a financial business corporation for tax years 1992 and 1993, then, under the provisions of N.J.S.A. 54:10A-4(k)(2)(E)(iii) as in effect for those years (this statutory provision was deleted by L. 1995, c. 418), plaintiffs entire net income as defined in N.J.S.A. 54:10A-4(f) would have been a negative amount, and plaintiff would have been required to pay only the minimum CBT of $25 per year. N.J.S.A. 54:10A-5(e). For the reasons set forth below, I hold that plaintiff failed to prove that it satisfied the statutory requirements for qualification *215 as a financial business corporation during the years in question, and I affirm the Director’s assessment.
The definition of a financial business corporation in the CBT Act is, in pertinent part, as follows:
“Financial business corporation” shall mean any corporate enterprise which is (1) in substantial competition with the business of national banks and which (2) employs moneyed capital with the object of making profit by its use as money, through . . making of or dealing in secured or unsecured loans and discounts____ This shall include, without limitation of the foregoing, business commonly known as industrial banks, dealers in commercial paper and acceptances, sales finance, personal finance, small loan and mortgage financing businesses, as well as any other enterprise employing moneyed capital coming into competition with the business of national banks;....
[N.J.S.A. 64:10A-4(m).]
By regulation, the Director has provided the following definition:
“Financial business corporation” means a corporation that is, in fact, in substantial competition with the business of national banks, and which also employs moneyed capital with the object of making profit by its use as money through any of the following:
3. Making of or dealing in secured or unsecured loans and discounts ...
[N.J.A.C. 18:7 -1.16(a).]
 Plaintiff contends that it satisfied the statutory and regulatory criteria because, during 1992 and 1993, an interest-bearing loan it had made in 1990 to its wholly-owned subsidiary, Chemical Bank New Jersey, N.A. (“Chemical NJ”) remained unpaid. Plaintiff previously had made loans to three other subsidiaries, only one of which (a $300,000 loan to Chemical Pennsylvania Corporation) was outstanding as of 1992 and 1993. Plaintiff provided no information as to the interest rate or other terms of these loans, and, therefore, cannot (and, apparently, does not) rely on them as supporting plaintiffs claim that it qualified for taxation as a financial business corporation.
The loan to Chemical NJ was a subordinated loan in the aggregate principal amount of $75,000,000, consisting of $50,000,000 lent on December 28, 1990, and an additional $25,000,000 lent on July 31, 1991.[1] The nature of the subordina *216 tion was not established at the hearing but is indicated by a January 1990 Consent in Lieu of Directors Meeting, signed by plaintiff’s (Erectors, authorizing a $3,000,000 loan to plaintiffs subsidiary Princeton Trust Company, National Association and requiring the loan to be “subordinated to the claims of other creditors.” Plaintiff borrowed from Chemical Banking Corporation (plaintiffs parent corporation) the funds used to make the loan to Chemical NJ. The interest rate on the loan to Chemical NJ was 10.25% per annum, approximately 2% in excess of the interest rates plaintiff paid to Chemical Banking Corporation for those years, resulting in a “profit” to plaintiff.
For 1992, plaintiffs CBT return reflected that approximately 88% of its total investment income consisted of the interest paid on the Chemical NJ loan. The balance consisted of interest on temporary cash investments (approximately 4%) and the proceeds of the sale of another subsidiary (approximately 8%). For tax year 1993, interest on the Chemical NJ loan represented approximately 86% of plaintiffs total investment income, interest from temporary cash investments represented approximately 3%, and approximately 11% was a dividend from Princeton Trust.
Plaintiffs loan to Chemical NJ was made in order to satisfy a request from the Office of the Comptroller of the Currency (the “Comptroller”) that Chemical NJ receive additional capital to satisfy regulatory mínimums as to capital ratios. The reasons for this request and the loan from plaintiff are reflected in the minutes of a December 18, 1990 Chemical NJ Board of Directors meeting which described a “continued erosion of capital” and anticipated a “capital infusion” from plaintiff of approximately $180,000,000, up to $100,000,000 of which was to be in the form of loans. The $75,000,000 loan from plaintiff to Chemical NJ constituted the loan portion of the capital infusion. The Comptroller treated the loan as primary capital of Chemical NJ for purposes of satisfying capital ratio requirements.
In a letter dated November 7, 1994, Chemical NJ requested approval from the Comptroller “to prepay [to plaintiff] ... subordinated debt” totaling $75,000,000. A “pro forma” capital ratio *217 computation was enclosed with the letter. A letter from plaintiff to the New Jersey Division of Taxation dated November 1, 2000, in support of the contention then being made by plaintiff that it was an investment company, contained the following paragraph describing the November 7,1994 letter:
This is a letter from Chemical Bank New Jersey NA to the Office of the Comptroller of the Currency by the bank’s chief financial officer. It is notifying them that the bank is asking for permission to pay off the two subordinated notes totaling $75M to its parent, Chemical New Jersey Holdings, Inc. The attached document on page 3 shows that the Office of the Comptroller of the Currency considers these notes as Primary Capital. Therefore, this is not a loan but is a capital contribution and should be considered investment assets.
By letter dated December 5, 1994, the Comptroller of the Currency granted approval to Chemical NJ “to prepay $75 million in subordinated debt as outlined in your letter dated November 7, 1994 and received by this office November 8, 1994,” and, within a few days thereafter, Chemical NJ repaid the $75,000,000 to plaintiff.
Plaintiff presented only one witness, a vice-president in the state and local tax group in the corporate tax department of J.P. Morgan Chase (the successor by merger to plaintiff and other Chemical Bank entities). This witness identified the business office of plaintiff during 1992 and 1993 as being located at the same address and in the same physical quarters as the main office of Chemical NJ. Plaintiff had its own officers but they were unpaid, and its payroll was $24,000 for 1992 and approximately $26,000 for 1993. The witness testified that plaintiff had made interest-bearing loans to subsidiaries other than Chemical NJ and all but one of which had been repaid before 1992. The witness provided no information as to the interest rates or other terms applicable to those loans.
The witness further testified that more than 75% of plaintiff’s income for each of the years under appeal was from the loan to Chemical NJ, and that, in making the loan, plaintiff was in competition with the business of national banks. The witness was unable to locate the subordinated notes described in the November 7, 1994 letter from Chemical NJ to the Comptroller discussed above, did not know to what the loan from plaintiff to Chemical NJ *218 was subordinated, did not know the due date or dates of the loan, and could not explain why the payment of the loan in December 1994 constituted prepayment.[2] The witness testified that the Comptroller’s approval was a prerequisite to any repayment because the Comptroller had to be satisfied that the financial condition of Chemical NJ was strong enough to allow a reduction of its capital.
Both plaintiff and the Director cite three decisions of the New Jersey courts. In all three, the taxpayers unsuccessfully sought to avoid taxation as a financial business or a financial business corporation. The first decision is Morris & Essex Investment Co., Inc. v. Director, Division of Taxation, 33 N.J. 24, 161 A.2d 491 (1960). There, the taxpayer was engaged in the business of lending money secured by second mortgages on real estate. Our Supreme Court reviewed in detail the history of the definition of a “financial business” then appearing in N.J.S.A. 54:10B-2, a provision of the Financial Business Tax Law, N.J.S.A. 54:10B-1 to -25, as then in effect.[3] The Court concluded that the definition contained two general criteria, both of which must be satisfied, namely: (1) the entity must be “in substantial competition with the business of national banks” and (2) the entity must employ moneyed capital with the object of making profit by its use as money, through, among other activities, maldng secured or unsecured *219 loans. Morris & Essex Investment Co., supra, 33 N.J. at 31, 161 A.2d 491. The Court also concluded that the definition identified certain types of businesses as financial businesses, without requiring an examination of whether they satisfied the two general criteria. Among the businesses specifically identified were “small loan and mortgage financing businesses.” Id. at 32, 161 A.2d 491. Consequently, the Court held that the taxpayer’s business constituted a financial business.
The Court also determined that, under the two general criteria, the taxpayer qualified as a financial business even though national banks could only lend on the basis of first mortgage security and the taxpayer lent on the basis of second mortgage security.
Assuming that national banks take only first mortgages and the petitioner only second mortgages, it does not follow that they are not in competition. From the point of view of a landowner with an existing lion held by a national bank, -who wishes to borrow additional money, they are certainly in competition. He may recast his first mortgage, obtain an additional loan from the national bank on other security, or seek a second mortgage with someone else.
[Id. at 35, 161 A.2d 491.]
In Walnut Realty Company v. Director, Division of Taxation, 36 N.J. 365, 177 A.2d 745 (1962), the second decision cited by the parties, the taxpayer claimed that it was not subject to treatment as a “financial business” because, during the years under appeal, its mortgage lending business was an incidental aspect of its real estate investment business, and was
nothing more than an accommodation to friends and relatives. To support this contention (the taxpayer] asserts that the [mortgage lending] business has not been listed in a telephone directory and has never advertised in any periodical as a mortgage and loan business or otherwise. In addition, all of its business is carried on in a private home, primarily by two stockholders who are over eighty years of age.
[Id. at 369-70,177 A.2d 745.]
The taxpayer also argued that, during the years under appeal, its loan business was static and that, for one year, no new loans were acquired. Id. at 372,177 A.2d 745.
Our Supreme Court held that the taxpayer was a mortgage financing business and rejected the argument that failure to use commercial advertising media removed it from that classification. *220 The Court found that there was a “regularity of mortgage financing,” id. at 371,177 A.2d 745, and that
[c]ommercial aspects override the asserted “accommodation” characterization in light of the fact that petitioner charged interest on its mortgage loans at the rate of 6%; the principal amount of the mortgages was being amortized as opposed to being subject to payment at the convenience of the borrowers; a number of the mortgage loans were negotiated subject to discounts; and attorneys and accountants who had clients in need of mortgage financing referred them to petitioner. At least in a limited circle then, the company was obviously known as an available source of mortgage financing capital.

[Ibid.]

With respect to the argument that, for one year, the taxpayer had no new mortgage lending activity, the Court noted that money previously lent remained outstanding and therefore the money was invested in mortgage loans in competition with the business of national banks. Id. at 375, 177 A.2d 745.
The third decision cited by the parties is I.H.E. Financial Corporation v. Director, Division of Taxation, 3 N.J.Tax 375 (Tax 1981). There, the Tax Court described the taxpayer as a sales finance corporation that lent money to customers of affiliated entities for use in financing the purchase of goods from the affiliated entities, and lent money directly to one of the entities. The taxpayer contended that it did not qualify as a financial business corporation because, during the years in question, its only loans were to an affiliated corporation, and it made no loans to unrelated borrowers although earlier loans to these borrowers remained outstanding. The court found that, even in the absence of new loans to unrelated borrowers “loans [by the taxpayer] to unrelated debtors were still generating interest income during the period in question.” Id. at 381.
Plaintiff derives the following three principles from these decisions:
1. a limited number of loans is sufficient to satisfy the general criteria of the statutory definition of a financial business corporation;
2. loans to related entities satisfy the general criteria of the definition; and
3. an entity’s failure to advertise or otherwise promote its lending business to the public does not disqualify the entity from financial business corporation status.
The Director argues that the three decisions do not support plaintiffs position because, in each decision, (1) the statutory *221 definition of financial business or financial business corporation specifically included the taxpayer’s type of business, and (2) the taxpayer was engaged in a substantial business of providing mortgage loans or sales financing. The Director describes plaintiffs loan activities as infrequent and limited to a few transactions with its wholly-owned subsidiaries, with no loans to the public.
 The Director also argues that plaintiff, as a bank holding company, cannot qualify as a financial business corporation under N.J.A.C. 18:7-1.16(e)(1), which provides that “[t]he ‘business of national banks’ as used in N.J.S.A. 54:10A-4(m) ... means the business of the bank itself and does not include bank subsidiaries, holding companies or affiliates.” I reject this argument because it misinterprets the regulation. The quoted language defines what constitutes the “business” of a national bank for purposes of determining whether a corporation is in competition with “the business of national banks.” Consequently, under the regulation, a corporation “in substantial competition with the business of” a national bank holding company and not with the business of the national bank itself could not qualify as a financial business corporation. The regulation contains a list of entities which cannot qualify as financial business corporations. Bank holding companies are not included in the list. N.J.A.C. 18:7-1.16(c). A bank holding company engaged in activities “in substantial competition with the business of national banks,” N.J.S.A. 54:10A-4(m)(1), therefore, could qualify as a financial business corporation.
I conclude that the three decisions described above are distinguishable from the facts before me on two bases. First, in each decision, the taxpayer was conducting a type of business expressly defined in the statute as a financial business or financial business corporation. Consequently, those portions of the decisions discussing the general criteria of the statute, that is, substantial competition with business of the national banks and the use of moneyed capital, constituted dicta. Here, plaintiffs business is not expressly defined as a financial business in N.J.S.A. 54:10A-4(m). The second basis for distinguishing the three decisions is that, in each, the taxpayer was engaged in a business which was *222 competitive with that of a national bank in that the borrowers from the taxpayer potentially could have obtained similar or replacement loans from national banks. As discussed below, I conclude that plaintiff failed to prove that, in lending $75,000,000 to Chemical NJ, plaintiff was competing with the business of national banks. The Tax Court opinion in I.H.E. Financial Corporation, supra, 3 N.J. Tax 375 could be read to suggest that whether the loan activity in question actually was competitive with the business of national banks need not be considered. There the court stated: “By placing loans to its affiliated corporation at a percentage above its capital cost taxpayer was employing moneyed capital with the object of making a profit and was thereby in direct competition with national banks.” Id. at 381. I do not regard this language as inconsistent with my analysis because, in I.H.E., the court did not address the issue of whether national banks would make loans similar to or competitive with the taxpayer’s loans. If I.H.E. indicates that consideration of this issue is unnecessary, I respectfully disagree.
Making loans is an element of the business activities of national banks. See N.J.A.C. 18:7-1.16(e) (referring to 12 U.S.C.A. § 21, et seq., as defining the business of a national bank); 12 U.S.C.A. § 24 (Seventh) (defining the powers of national banks); Office of the Comptroller of the Currency, Activities Permissible for a National Bank 15 (Feb. 2006) (stating that a national bank “may make, purchase, sell, service or warehouse loans or other extensions of credit for its own or another’s account, including ... commercial loans.”). As described above, plaintiffs loan to Chemical NJ was subordinated to all other debts of the borrower, the loan was unsecured, and approval by the Comptroller was a prerequisite to repayment. Plaintiff failed to establish that this transaction constituted a type of loan activity similar to or competitive with that in which national banks did or could engage in 1992 and 1993. Plaintiff presented no proof that national banks could or would have made loans to another bank’s operating subsidiary, particularly loans that, in reality, were contributions to capital (see the quotation from plaintiffs November 1, 2000 letter to the Division of Taxation discussed above). Plaintiff also presented no proof *223 that national banks would have made loans that were subordinated, unsecured, and not repayable without the approval of the Comptroller. Plaintiffs proofs included no information as to the terms of loans it had made to subsidiaries other than Chemical NJ. As a result, that loan activity cannot and does not support plaintiffs claim that it was “in substantial competition with the business of national banks.”
Plaintiffs witness testified that, in his experience, national banks had lent money to Chemical entities, but he could not recall a loan to a domestic operating bank and did not describe any loan that was to be treated as capital of an operating bank. Thus the witness failed to establish that Chemical NJ could have obtained, from national banks, a loan similar to or competitive with that made by plaintiff. Given the nature of the loan, its subordinated nature, and, the requirement for approval of the Comptroller for repayment, no inference can be drawn that national banks would engage in this type of loan activity in the absence of affirmative evidence supporting such an inference. Plaintiff presented no such evidence.
The discussion in Morris & Essex Investment Co., supra, 33 N.J. at 35, 161 A.2d 491, relating to the extent of the taxpayer’s mortgage lending activity, reflects our Supreme Court’s determination that actual or potential competition with a national bank, that is, activity which had the potential of diverting business from a national bank, is required in order to satisfy the “substantial competition with the business of national banks” criterion in N.J.S.A. 54:10A-4(m)(1). In Walnut Realty Company, supra, the Court adopted a similar approach, noting that: “as long as substantial sums of money originally invested in competition remain invested in mortgage loans, they are employed in competition with the business of national banks; for money so invested ties up a market otherwise available to the business of such banks.” 36 N.J. at 375, 177 A.2d 745. The Tax Court, in I.H.E. Financial Corporation, supra, described the lending activity in issue before it as being “in direct competition with national banks.” 3 N.J.Tax at 381.
*224 Based upon the preceding discussion, I conclude that plaintiff failed to establish that, for the tax years in issue, it was “in substantial competition with the business of national banks” as required by N.J.S.A. 54:10A-4(m)(1). As a result, plaintiff did not qualify for taxation as a financial business corporation for tax years 1992 and 1993. I do not base this conclusion on plaintiffs failure to lend to unrelated entities, its failure to advertise, or its limited staff. I base the conclusion on plaintiffs failure to prove by a preponderance of the evidence that national banks would have competed for loan business of the type represented by plaintiffs loan to Chemical NJ — a loan that was unsecured, subordinated to all other indebtedness of the borrower, and made to an entity with insufficient capital under standards applied by the Comptroller resulting in the necessity to obtain the Comptroller’s approval for repayment.
My reliance on the lack of security for the loan as supporting my conclusion is not inconsistent with the references to unsecured loans in N.J.S.A. 54:10A-4(m), or in N.J.A.C. 18:7-1.16(a)3. Both the statute and the regulation set forth categories of transactions that satisfy the statutory requirement for the use of moneyed capital for purposes of making a profit. The “making of ... secured or unsecured loans” is one category. Neither the statute nor the regulation, however, defines such loan activity as constituting “substantial competition with the business of national banks.” But see I.H.E. Financial Corp., supra, 3 N.J.Tax at 381 (treating the statutory reference to unsecured loans as indicating that unsecured lenders would be in competition with national banks without discussing whether a national bank would make a particular loan).
My conclusion that plaintiff failed to prove that its loan activity was in substantial competition with the business of national banks under N.J.S.A. 54:10A-4(m)(1) obviates the need to decide whether plaintiffs loan to Chemical NJ constituted the use of moneyed capital with the object of making a profit under N.J.S.A 54:10A-4(m)(2). Morris & Essex Investment Co., supra, 33 N.J. 24, 161 A.2d 491, holds that an entity not specifically identified in N.J.S.A. 54:10A-4(m) as a financial business corporation must satisfy both *225 of the general criteria contained in the statute in order to qualify as a financial business corporation. Plaintiff’s failure to satisfy the “substantial competition with the business of national banks” criterion, therefore, precludes qualification without regard to the “use of moneyed capital” criterion.[4]
Judgment will be entered affirming the Director’s assessment of corporation business tax and denying plaintiffs claim for refund.

 This opinion refers to the two loans together as a single loan.

 In order to clarify the nature of the subordination and "prepayment," I directed plaintiff to supplement the record with a copy of plaintiffs certificate of incorporation and copies of the notes and other documents evidencing plaintiff's loans to Chemical NJ and to any other subsidiary. Plaintiff could not locate, and therefore failed to produce, any of these documents other than its certificate of incorporation. Plaintiff's efforts to obtain from the Comptroller loan documents relating to the Chemical NJ loan were unsuccessful. Although I have some doubt as to the existence of the loan documents, for purposes of this opinion I will assume that proper documentation existed.

 An amendment to N.J.S.A. 54:10B-2, L. 1975, c. 171, § 1, excluded financial business corporations from the definition, included financial business corporations in the CBT Act, and inserted a definition of financial business corporations as paragraph (m) of N.J.S.A. 54:10A-4. The definition essentially was identical to that contained in N.J.S.A. 54:10B-2. The Financial Business Tax Law was repealed by L. 1995, c. 295, § 1.

 Plaintiff relied on the testimony on cross-examination of a representative of the Division of Taxation as supporting plaintiff's position that both statutory criteria were satisfied To the extent the witness's testimony was at variance with the analysis in this opinion, I reject the testimony as reflecting an erroneous interpretation of the statutory and regulatory requirements for qualification as a financial business corporation. In any event, the testimony does not bind the Director. See Petition of Adamar of New Jersey, Inc., 222 N.J.Super. 464, 475, 537 A.2d 704 (App.Div.1988) (holding that, to the extent the staff of the Casino Control Commission erred in approving payment on outstanding counter checks at branch offices, "the Commission properly exercised its authority to reopen and vacate the approvals.") See also Hutchinson v. Atlantic City Medical Center-Mainland, 314 N.J.Super. 468, 481-82, 715 A.2d 348 (App.Div. 1998) (holding that a party is not bound by the testimony of a witness it calls).